**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(EASTERN DIVISION)**

| | |
|---|---|
| **In re** <br><br> **OXFORD STREET EDUCATION, LLC** <br><br> **Debtor.** | **Chapter 7** <br> **Case No. 26-11334-JEB** |

**EXPEDITED MOTION OF FRIENDS OF JP EDUCATION, INC.**
**FOR RELIEF FROM STAY**

**(Assented to by Harold B. Murphy, Chapter 7 Trustee)**

Now comes secured creditor, Friends of JP Education, Inc. ("Friends of JP"), with the Assent of Harold B. Murphy, Chapter 7 Trustee ("Trustee") of the Debtor, Oxford Street Education, LLC ("Debtor") and hereby moves this Court, pursuant to Sections 362(d)(1) and (d)(2) of the Bankruptcy Code and MLBR 4001-1, for relief from the automatic stay in order to pursue all of its rights and remedies against the tangible personal property of the Debtor located at located at 3815 Washington Street, Boston, MA, (the "Jamaica Plain Assets").

**Expedited Determination Requested**

Expedited determination is requested as the Trustee has entered into a Stipulation with APW, Inc. (the "Jamaica Plain Landlord") whereby the Leases for the Premises will be terminated; and (b) the Landlord granted relief to terminate the Leases and relief from stay to evict the Debtor (the "Stipulation"). [Dkt. No. 26, 27].

Pursuant to the Stipulation the Jamaica Plain Landlord shall provide the Trustee, holders of secured claims, and counterparties to personal property leases, with access to the Premises, including for removal of collateral or leased property subject to proof of insurance, for a period

4920-0792-7481.3

of thirty (30) days following approval of the Stipulation. Expedited determination is required to facilitate the removal and disposal of the Jamaica Plain Assets by the Friends of JP.

In support of this Motion, Friends of JP state as follows:

## Background

1. On June 5, 2026, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code and the Trustee was appointed.

2. At the time of the filing, the Debtor operated a private school for students from pre- kindergarten through sixth (6th) grade. All operations at the Croft School have now concluded and the school ceased operations as of June 12, 2026.

3. Prior to the Petition Date, the Debtor and JP Education entered into a loan agreement for sums in the original principal amount $1,500,000 as evidenced by a Promissory Note ("Note"). in favor of the Friends of JP.   A copy of the Note is attached as Exhibit A.

4. At the time the Debtor executed the Note, it granted the Friends of JP a first-priority security interest on the Jamaica Plain Assets to secure its obligations under the Note.  A copy of the Security Agreement is attached as Exhibit B.

5. The Friends of JP is the holder of a valid, perfected security interest in the Jamaica Plain Assets as evidenced by the UCC-1 Financing Statement filed with the Commonwealth of MA. See Exhibit C.

6 No payments have been made under the Note.  As of the Petition Date, the Debtor was indebted to the Friends of JP in an amount in excess of $500,000.

7. The Debtor's indebtedness under the Note exceeds the value of the Jamaica Plain Assets and there is no equity in those assets for the Chapter 7 Estate.[1]

---

[1] The Premises also contain personal property leased from Camber Road Partners, Inc. which is not the subject of this Motion.

4920-0792-7481.3

8. Under the circumstances, the Trustee consents to the request of Friends of JP for relief from Stay.

**Relief from the Automatic Stay**

10. Friends of JP seek relief from the automatic stay provisions of 11 U.S.C. § 362 (d)(1) and/or (d)(2) in order to take possession of the Jamaica Plain Assets and donate them to a charitable entity.

11. There is no equity for the bankruptcy estate in the Jamaica Plain Assets. The Jamaica Plain Assets are not necessary to an effective reorganization because this is a Chapter 7 liquidation proceeding.

12. The Trustee has determined that administration or liquidation of the Jamaica Plain Assets by the Estate would not provide a benefit to the estate.

13. Based upon the foregoing, relief from the automatic stay pursuant to Sections 362(d)(1) and (d)(2) of the Bankruptcy Code is warranted and appropriate.

**Notice**

14. Copies of this Motion have been served upon the United States Trustee, counsel to the Debtor, all parties asserting secured interests, and all parties that have requested notice of pleadings in this case.

15. Friends of JP request that this Court find such service to be appropriate and sufficient notice in these circumstances, which is in the best interest of all creditors.

WHEREFORE, Friends of JP, with the assent of the Trustee, respectfully requests that this Court enter an Order:

A. Granting relief from the automatic stay pursuant to 11 U.S.C. §§ 362 (d)(1) and (d)(2);

4920-0792-7481.3

B.  Authorizing the Friends of JP to exercise all rights and remedies available under applicable law with respect to the Jamaica Plain Assets;

C.  Waiving the provisions of Bankruptcy Rule 4001(a)(3) granting relief from stay immediately effective and enforceable upon entry of an Order by this Court; and

D.  Granting such further relief as is just and appropriate.


Respectfully submitted this 30th day of June, 2026.

Respectfully Submitted,

FRIENDS OF JP EDUCATION, INC.,
By Its Attorneys,

/s/ *Christopher M. Condon*
Christopher M. Condon (BBO #652430)
BOWDITCH & DEWEY, LLP
75 Federal Street, Suite 1000
Boston, Massachusetts 02110
Tel: (617) 757-6513
Date: June 30, 2026                     Email: ccondon@bowditch.com

4

4920-0792-7481.3

EXHIBIT A

## BRIDGE PROMISSORY NOTE

**Principal Amount: Up to $1,500,000.00 Date: April 7, 2026**

FOR VALUE RECEIVED, **Oxford Street Education, LLC**, a Delaware limited liability company doing business as The Croft School ("Maker"), with its principal place of business at 21 Fox Hill Road, Wellesley Hills, Massachusetts 02481, hereby promises to pay to the order of **Friends of JP Education, Inc.**, a Massachusetts nonprofit corporation ("Payee"), at 260 Franklin Street, Suite 1860, Boston, MA, 02110, Attention: Jake Walker, or at such other place Payee may from time to time designate in writing to Maker, the aggregate unpaid principal amount of all Advances (as defined below) made by Payee pursuant to this Note, together with all accrued and unpaid interest thereon, in lawful money of the United States, as hereinafter provided.

### ARTICLE 1 —CREDIT FACILITY; ADVANCES

**1.1 Credit.** This Note evidences a tranched bridge credit facility under which Payee has made or may make, in its sole and absolute discretion, advances to or on behalf of Maker from time to time (each an "Advance" and collectively the "Advances"), in an aggregate outstanding principal amount not to exceed One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00) at any time (the "Commitment Amount"). The Commitment Amount may be increased from time to time, in Payee's sole and absolute discretions, by written agreement of Maker and Payee. Each Advance shall increase the outstanding principal balance of this Note by the amount of such Advance.  Nothing hereunder shall obligate Payee to make Advances to Maker.

**1.2 Permitted Uses.** Each Advance shall be used solely for one or more of the following purposes in connection with Maker's operation of The Croft School JP (the "School") at 3815 Washington Street, Boston, MA 02130(the "JP Location"):

(a) Payment of wages, salaries, payroll taxes, and employee benefits for teachers and administrative staff employed at the JP Location, including a reasonable percentage of central office staffing;

(b) Payment of rent and affiliated occupancy costs for the JP Location; and

(c) Payment of other operating expenses directly attributable to the continued operation of the School at the JP Location, as approved in advance by Payee.

The permitted uses described in clauses (a) through (c) of this Section 1.2 are hereinafter referred to as the "Permitted Uses."

**1.3 Direct Payment to Third Parties.** All Advances shall be or have been remitted directly by Payee to the applicable third-party payees (including, without limitation, Maker's payroll provider, landlords, and vendors) in satisfaction of the Permitted Uses. Payee shall not remit any Advance to Maker's general operating accounts. Each such direct payment to a third party on Maker's behalf shall constitute an Advance under this Note and shall be included in the outstanding principal balance.

**1.4 Record of Advances.** Maker acknowledges that the Payee has advanced with this Note the Advances set forth on Schedule A hereto.  The Payee shall keep a record of additional Advances made under this Note and shall provide to Maker a schedule of Advances, within five (5) business days or a written request by Maker.

4934-7695-6064.2

## ARTICLE 2 — INTEREST

**2.1 Interest Rate.** Interest shall accrue on the outstanding principal balance of this Note at the rate of ten percent (10%) per annum, calculated on the basis of a 365-day year and actual days elapsed.

**2.2 Default Interest.** Upon the occurrence and during the continuance of an Event of Default (as defined in Article 6), interest shall accrue on the outstanding principal balance at the rate of fifteen percent (15%) per annum, or the maximum rate permitted by applicable law, whichever is less.

**2.3 Usury Savings.** Notwithstanding any provision of this Note to the contrary, in no event shall the interest charged hereunder exceed the maximum rate permitted by applicable law. If interest payable hereunder is determined to exceed the maximum amount permitted by law, such interest shall be reduced to the maximum amount permitted, and any excess interest previously collected shall, at the option of Payee, be refunded to Maker or credited against the outstanding principal balance of this Note.

## ARTICLE 3 — MATURITY; REPAYMENT

**3.1 Maturity Date.** All outstanding principal, together with all accrued and unpaid interest and any other amounts owing under this Note, shall be due and payable in full on August 31, 2026 (the "Maturity Date"), unless earlier accelerated in accordance with Article 6 or Article 7 of this Note.

**3.2 Voluntary Prepayment.** Maker may prepay the outstanding principal balance of this Note, in whole or in part, at any time without premium or penalty, provided that any partial prepayment shall be accompanied by payment of all accrued and unpaid interest on the amount prepaid through the date of prepayment.

## ARTICLE 4 — APPLICATION OF ADVANCES TOWARD ASSET ACQUISITION;

## PURCHASE OPTION

**4.1 Purpose of Advances.** All Advances made under this Note are made expressly in furtherance of Payee's potential acquisition of substantially all assets used in Maker's operation of the School at the JP Location (the "JP Assets") and Payee's obtaining leasehold interests in the JP Location by sublease, assignment, or termination of one or both of the Existing Leases (as defined below) and entry into new leases, as further described in this Article 4.

**4.2 Payee's Purchase Option.** At and after such time as the Advances exceed $500,000 while this Note remains outstanding, Payee shall have the right, but not the obligation, to purchase the JP Assets (the "Purchase Option"). As a condition to the closing of any purchase pursuant to the Purchase Option, all liens on the JP Assets that are senior in priority to the security interest held by Payee under the Security Agreement (including the liens held by Leader Bank (as defined below)) ("Senior Liens") shall be satisfied, released, or otherwise discharged at or prior to closing, whether from a portion of the purchase price, from separate funds provided by Payee, or through such other arrangement as Payee and the holder of such Senior Liens may agree. After giving effect to the satisfaction of all Senior Liens, the aggregate amount of Advances made under this Note, together with accrued interest, shall be the purchase price for the JP Assets at closing; provided that, to the extent the aggregate Advances and accrued interest exceed a third party appraised fair market value of the JP Assets (inclusive of any amounts applied to satisfy Senior Liens), such excess shall remain owing by Maker to Payee as indebtedness under this Note. The Purchase Option shall terminate automatically upon repayment of this Note in full, including all accrued interest.

The parties acknowledge and agree that, in any liquidation or wind-down of Maker's operations, the fair market value of the JP Assets will be substantially dependent upon the continued enrollment of the students currently attending the School. The School is integral to its community, and its closure or disruption would deprive students of the ability to complete their education and would substantially

4934-7695-6064.2

diminish the value of the JP Assets. The parties further acknowledge that, in such a liquidation context, Payee is likely to be the only prospective purchaser capable of retaining the existing student community and continuing the School's operations as a going concern. Accordingly, the parties agree that the purchase price determined pursuant to this Section 4.2 — equal to the aggregate Advances together with accrued interest — reflects an arm's-length valuation of the JP Assets in consideration of these circumstances.

The parties further acknowledge and agree that the purchase price for the JP Assets may increase as additional Advances are made by Payee pursuant to this Note, and that such increase in purchase price may be appropriate. Each additional Advance is an indication that the School is continuing to operate under financially distressed circumstances for an extended period, during which Payee is preserving the School as a going concern and maintaining the student enrollment upon which the value of the JP Assets depends. Without such Advances, the School would close and the JP Assets would lose substantially all of their going-concern value.

**4.3 Cooperation on Leases – 3815 Washington Street.** Maker is the lessee under (i) that certain Standard Form Commercial Lease dated June 30, 2019, between APW, LLC, as lessor (the "Lessor"), and Maker, as lessee, for space on the first floor, 20 parking spaces and play space located at 3815 Washington Street, Boston, MA 02130 (the "Property"), (ii) that certain Standard Form Commercial Lease dated December 31, 2021, by and between Maker and Lessor for space on the second floor of the building and parking located at the Property and additional parking located at 3859 Washington Street Roslindale, MA 02131, (iii) that certain Standard Form Commercial Lease dated October, 2024, by and between Maker and Lessor, for space on the third floor of the building located at the Property and additional parking located at 3859 Washington Street Roslindale, MA 02131 ((i)-(iii) collectively, the "Existing Leases").  In the event that the Purchase Option is exercised, Maker shall use reasonable best efforts to assist Payee in obtaining a leasehold interest in the premises demised under the Existing Leases, whether by assignment of the Leases to Payee, sublease of such premises to Payee, termination of the Existing Leases and entry into a new lease or leases between the lessor and Payee, or such other arrangement as the parties may agree, in each case on terms not materially less favorable to Payee than the terms of the Existing Leases as in effect on the date hereof. Maker shall not amend, modify, terminate, or surrender the Existing Leases, or take any action that would result in a default under the Existing Leases, without the prior written consent of Payee.

**4.4 Cooperation on Leases.** In the event that the Purchase Option is exercised and Payee desires to operate the School at the premises under the Existing Leases and Payee requests, in its absolute sole discretion, Maker shall use reasonable best efforts to assist Payee in taking assignment of the Existing Leases or otherwise obtaining leasehold interests in the JP Location.

**4.5 Cooperation on Zoning Approvals.** Maker shall use reasonable best efforts to cooperate with Payee in obtaining all zoning approvals, permits, variances, and other governmental authorizations necessary or desirable for Payee's intended operation of the School at the JP Location, including, without limitation, appearing before the Boston Zoning Board of Appeal or any other governmental body, providing documentation, executing applications or consents, and otherwise taking such actions as Payee may reasonably request in connection therewith.

## ARTICLE 5 — REPRESENTATIONS AND WARRANTIES OF MAKER

Maker represents and warrants to Payee as of the date hereof and as of the date of each Advance that:

**5.1 Organization and Authority.** Maker is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware, and has full power and authority to execute, deliver, and perform its obligations under this Note.

4934-7695-6064.2

**5.2 Due Authorization.** The execution, delivery, and performance of this Note have been duly authorized by all necessary action on the part of Maker.

**5.3 Enforceable Obligation.** This Note constitutes the legal, valid, and binding obligation of Maker, enforceable against Maker in accordance with its terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium, or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles.

**5.4 Existing Indebtedness.** Maker represents that, as of the date hereof, Maker's outstanding indebtedness to Leader Bank, N.A. ("Leader Bank"), secured by a lien on substantially all of Maker's assets, does not exceed Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00).

**5.5 Existing Leases.** The Existing Leases are in full force and effect and have not been amended, modified, or supplemented except as disclosed to Payee. To Maker's knowledge, no event has occurred that, with the giving of notice or the passage of time or both, would constitute a default by Maker under either of the Existing Leases, except as previously disclosed to Payee in writing.

**5.6 Title to Assets.** Maker has good and marketable title to the JP Assets, free and clear of all liens, claims, and encumbrances, except for the lien in favor of Leader Bank described in Section 5.4 and any other liens disclosed in writing to Payee.

**5.7 Completeness of Disclosure.** No representation or warranty made by Maker in this Note contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements contained herein not misleading. Maker acknowledges and Payee understands that Maker's board does not have a complete picture of Maker's overall financial condition, and Maker is providing the representations in this Article 5 to the best of its current actual knowledge and belief.

**5.8 Current Financial Status.** Maker represents and Payee acknowledges and has full notice that Maker is currently unable to satisfy its financial obligations for the School, the JP Location (including the Leases), and this Note.  Maker represents and Payee acknowledges that repayment or satisfaction of this Note and the Commitment Amount, in full or in part, shall not be possible without a reorganization as set forth in Section 8.1 or exercise of the Purchase Option.

## ARTICLE 6 — EVENTS OF DEFAULT; ACCELERATION

**6.1 Events of Default.** Each of the following shall constitute an "Event of Default" under this Note:

(a) Maker fails to pay any amount due under this Note when due and such failure continues for five (5) days after written notice from Payee;

(b) Maker breaches any representation, warranty, or covenant contained in this Note, and such breach (if capable of cure) is not cured within fifteen (15) days after written notice from Payee;

(c) Maker uses any Advance for a purpose other than a Permitted Use;

(d) Maker amends, modifies, terminates, or surrenders either of the Existing Leases without the prior written consent of Payee;

(e) Maker ceases to operate the School at any of the JP Location (other than for customary school recesses, vacations, and summer breaks), except as set forth in Section 10.1;

(f) A receiver, trustee, or custodian is appointed for Maker's JP Location or any substantial part of Maker's assets at the JP Location; or

4934-7695-6064.2

(g) Maker makes a general assignment for the benefit of creditors without the consent of Payee.

**6.2 Remedies.** Upon the occurrence and during the continuance of an Event of Default, Payee may, by written notice to Maker, declare all outstanding principal, accrued interest, and all other amounts owing under this Note to be immediately due and payable, without further demand, presentment, protest, or notice of any kind, all of which are hereby expressly waived by Maker.

## ARTICLE 7 — CHANGE IN CONTROL; DIP FINANCING

**7.1 Change in Control.** Upon the occurrence of a Change in Control (as defined below), all outstanding principal, accrued interest, and all other amounts owing under this Note shall immediately become due and payable without notice or demand. A "Change in Control" means (a) any sale, transfer, or other disposition (whether by merger, consolidation, or otherwise) of all or substantially all of the assets of Maker (other than to Payee pursuant to the Purchase Option), (b) any sale, transfer, or other disposition of a majority of the membership interests in Maker, or (c) any transaction or series of related transactions that results in any person or group of persons (other than the current members of Maker as of the date hereof) acquiring control of Maker.

**7.2 DIP Financing.** In the event that a debtor-in-possession lender provides financing to Maker in connection with a case commenced under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), all outstanding principal, accrued interest, and all other amounts owing under this Note shall, at Payee's option, become immediately due and payable.

**7.3 Roll-Up of Indebtedness.** In the event that Maker commences or becomes subject to a case under Chapter 11 of the Bankruptcy Code, Maker shall use reasonable best efforts to cooperate with Payee, at Payee's option, to structure the Advances and all other amounts outstanding under this Note as debtor-in-possession financing under Section 364 of the Bankruptcy Code, including, without limitation, supporting any motion filed by Payee seeking approval of a debtor-in-possession credit facility that incorporates and "rolls up" the pre-petition Advances into post-petition obligations with superpriority administrative expense status and such liens as the bankruptcy court may authorize.

## ARTICLE 8 — NON-INTERFERENCE WITH REORGANIZATION

**8.1 No Restriction on Reorganization.** Nothing in this Note is intended to, nor shall it be construed to, inhibit, restrict, or prevent Maker from (a) pursuing a reorganization, recapitalization, or other restructuring of its business, whether in or out of court, (b) soliciting, negotiating, or consummating a sale of all or substantially all of its assets or equity interests to any third party, or (c) commencing or becoming subject to a case under the Bankruptcy Code. For the avoidance of doubt, the exercise by Payee of its rights under Article 6 or Article 7 upon the occurrence of an Event of Default, a Change in Control, or the provision of DIP financing shall not be deemed to inhibit or restrict Maker's ability to pursue any of the foregoing.

## ARTICLE 9 — SECURITY

**9.1 Security Interest.** Maker's obligations under this Note are secured by a security interest in the collateral described in that certain Security Agreement of even date herewith between Maker, as Grantor, and Payee, as Secured Party (the "Security Agreement").

## ARTICLE 10 — COVENANTS

**10.1 Operation of School.** Until such time as this Note is repaid in full, a restructuring pursuant to Section 8.1 closes, or the JP Assets are acquired by Payee, subject to ongoing Advances to cover applicable expenses, Maker shall continue to operate the School at the JP Location in the ordinary course of business and substantially in accordance with past practices, and shall maintain the JP Assets in good

4934-7695-6064.2

condition and repair, ordinary wear and tear excepted.  Subject to Section 1.1 of this Note, Payee shall make all Advances required to cover all Permitted Uses set forth in Section 1.2 and as incurred through the earlier of (a) a closing of a sale of the JP Assets or (b) the end of the 2025-2026 school year, including all amounts set forth in Section 1.2(a).

**10.2 Books and Records.** Maker shall provide Payee with reasonable access, upon reasonable advance notice, to Maker's books and records relating to the JP Location, the JP Assets, and the Existing Leases.

**10.3 Notice of Material Events.** Maker shall notify Payee in writing as soon as possible and no later than two business days of (a) any default or event of default under either of the Existing Leases, (b) any communication from any landlord regarding the Existing Leases, (c) any lien, claim, or encumbrance asserted against the JP Assets, (d) any litigation or threatened litigation that could materially adversely affect the JP Assets or the Existing Leases, (e) any communication from Leader Bank regarding its secured indebtedness, (f) any event described in Article 7, and (g) the entry into any term sheet, LOI or similar indication of interest that would result in an event described in Article 7.

**10.4 No Additional Indebtedness.** Maker shall not incur any additional indebtedness secured by the JP Assets without the prior written consent of Payee, except for ordinary-course trade payables incurred in connection with the operation of the School at the JP Location or a DIP Financing arrangement pursuant to Section 7.2.

## ARTICLE 11 — GENERAL PROVISIONS

**11.1 Waivers by Maker.** Maker hereby waives diligence, presentment, protest and demand, notice of protest, dishonor and nonpayment of this Note, and any other notice of any kind (other than such notice as is expressly required by applicable law and with respect to which waiver is prohibited under the terms of this Note), and expressly agrees that, without in any way affecting Maker's liability for payment of amounts due hereunder, Payee may extend the Maturity Date or the time for payment of any amount due hereunder, accept additional security, release any party liable hereunder, or release any security now or hereafter securing this Note.

**11.2 Costs of Enforcement.** If an Event of Default occurs, Maker shall pay all reasonable and documented costs and expenses of enforcement and collection, including reasonable attorneys' fees; provided that Maker shall have no obligation to pay such costs and expenses in the case of any action or proceeding brought by Payee against Maker if Maker prevails in such action or proceeding.

**11.3 Governing Law.** This Note shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without regard to its conflicts of law principles that would result in the application of another law.

**11.4 Severability.** If any provision of this Note is declared by a court of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision hereof, which shall to the fullest extent possible remain in full force and effect.

**11.5 Amendments.** This Note may not be amended, modified, or supplemented except by a written instrument signed by both Maker and Payee.

**11.6 Notices.** Any notice or demand required or permitted to be made or given hereunder shall be in writing and shall be deemed duly served if (a) delivered personally, (b) sent by certified or registered mail, return receipt requested, postage prepaid, or (c) sent by nationally recognized overnight courier service, addressed as follows:

If to Maker:

4934-7695-6064.2

Oxford Street Education, LLC 21 Fox Hill Road Wellesley Hills, Massachusetts 02481

If to Payee:

Friends of JP Education, Inc., 260 Franklin Street, Suite 1860, Boston, MA 02110, Attention: Jake Walker

Either party may change its address by written notice to the other party in accordance with this Section 11.6.

**11.7 Successors and Assigns.** This Note shall be binding upon Maker and its successors and assigns, and shall inure to the benefit of Payee and its successors and assigns. Maker shall not assign this Note or any of its obligations hereunder without the prior written consent of Payee.

**11.8 Entire Agreement.** This Note, together with the Security Agreement and the Schedule of Advances, constitutes the entire agreement between Maker and Payee with respect to the subject matter hereof and supersedes all prior negotiations, representations, warranties, commitments, offers, and agreements relating to such subject matter.

*[Signature Page Follows]*

4934-7695-6064.2

**IN WITNESS WHEREOF**, Maker has duly executed this Bridge Promissory Note as of the date first above written.

**OXFORD STREET EDUCATION, LLC** d/b/a The Croft School

By: _____   By: ___Jack Remondi_____

Name: Rishi Shukla   Name: Jack Remondi

Title: Manager   Title: Manager

Date: April 12, 2026   Date: April 13, 2026

**Accepted and agreed:**

**FRIENDS OF JP EDUCATION, INC.**

By: _____

Name: Tim Cummings

Title: President

Date: April 13, 2026

4934-7695-6064.2

## EXHIBIT A — SCHEDULE OF ADVANCES

| Advancement No. | Date of Advance | Advancement Amount | Purpose | Date of Services Rendered or Invoice Date |
|---|---|---|---|---|
| 1 | 3/30/2026 | $144,464.04 | Gusto, Inc.—payroll 3/16/26 to 3/31/26 | |
| 2 | 3/31/2026 | $52,649.79 | APW LLC—rental expenses to landlord | |
| 3 | 4/6/2026 | $3,665.81 | Jan-Pro Franchise Development of MA / Commonwealth Franchise Group—school cleaning vendor | |
| 4 | 4/6/2026 | $1,539.81 | Eversource - Account # 74014012400—utilities | |
| 5 | 4/6/2026 | $7,070.11 | Eversource - Account # 74014009661—utilities | |
| 6 | 4/6/2026 | $186.11 | National Grid - Account #5693495014—utilities | |
| | | | | |

4934-7695-6064.2

EXHIBIT B

## SECURITY AGREEMENT

This SECURITY AGREEMENT (this "Agreement"), dated as of March [30], 2026, is made by **Oxford Street Education, LLC**, a Delaware limited liability company doing business as The Croft School ("Grantor"), with its principal place of business at 21 Fox Hill Road, Wellesley Hills, Massachusetts 02481, in favor of **Friends of JP Education, Inc.**, a Massachusetts nonprofit corporation ("Secured Party"), with its principal office at 260 Franklin Street, Suite 1860, Boston, MA 02110, Attention: Jake Walker.

### RECITALS

WHEREAS, Grantor has executed that certain Bridge Promissory Note of even date herewith in favor of Secured Party, in the principal amount of up to [One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00)] (as amended, restated, supplemented, or otherwise modified from time to time, the "Note"), pursuant to which Secured Party may make Advances (as defined in the Note) to or on behalf of Grantor in connection with Grantor's operation of The Croft School JP(the "School") at 3815 Washington Street, Boston, MA 02130 (the "JP Locations"); and

WHEREAS, as a condition to and in consideration of the Advances to be made under the Note, Grantor desires to grant to Secured Party a security interest in certain of Grantor's assets to secure the Secured Obligations (as defined herein);

NOW, THEREFORE, in consideration of the mutual covenants, terms, and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

### ARTICLE 1 — DEFINITIONS

**1.1 Defined Terms.** All capitalized terms used herein without definition shall have the respective meanings set forth in the Note. Unless otherwise defined herein, terms used herein that are defined in the Uniform Commercial Code as in effect from time to time in the Commonwealth of Massachusetts (the "UCC") shall have the meanings assigned to them in the UCC. If a term is defined in Article 9 of the UCC differently than in another Article of the UCC, the term has the meaning specified in Article 9.

**1.2 Additional Definitions.** As used in this Agreement:

(a) "Collateral" has the meaning set forth in Section 2.1.

(b) "Event of Default" has the meaning set forth in Article 6 of the Note, and shall also include any failure by Grantor to perform any obligation under this Agreement that is not cured within fifteen (15) days after written notice from Secured Party.

(c) "Leader Bank Lien" means the existing security interest and lien held by Leader Bank, N.A. ("Leader Bank") on substantially all of Grantor's assets, as described in Section 5.4 of the Note.

(d) "Permitted Liens" means (i) the Leader Bank Lien, (ii) liens for taxes, assessments, or governmental charges not yet due and payable, and (iii) any other liens disclosed in writing to Secured Party.

(e) "Proceeds" has the meaning assigned to it in Article 9 of the UCC.

(f) "Secured Obligations" has the meaning set forth in Section 3.1.

(g) "JP Assets" has the meaning set forth in the Note.

4904-4349-1232.2

## ARTICLE 2 — GRANT OF SECURITY INTEREST

**2.1 Security Interest.** For value received, Grantor hereby grants to Secured Party a continuing security interest in, and pledges and assigns to Secured Party, all of the following property, assets, and rights of Grantor, in each case to the extent located at, used in, held for use in, or arising from or relating to the operation of the School at the JP Location, whether now owned or hereafter acquired, and all Proceeds and products thereof (collectively, the "Collateral"):

(a) all goods, including all equipment, furniture, fixtures, and inventory, located at or used in connection with the JP Location;

(b) all accounts and accounts receivable arising from or related to the operation of the School at the JP Location, including all tuition receivables, fee receivables, and other amounts owing from students, parents, or other third parties in connection with the JP Location;

(c) all instruments (including promissory notes), documents (whether tangible or electronic), and chattel paper (whether tangible or electronic), in each case arising from or related to the operation of the School at the JP Location;

(d) all general intangibles arising from or related to the operation of the School at the JP Location, including all intellectual property, trade names (including the name "The Croft School JP" and any variations thereof), curricula, educational materials, student lists, enrollment records, goodwill, and going-concern value associated with the School at the JP Location;

(e) all deposit accounts into which funds arising from the operation of the School at the JP Location are deposited;

(f) all books and records relating to the JP Location, the JP Assets, and any of the foregoing Collateral;

(g) all insurance policies and insurance proceeds relating to any of the foregoing Collateral;

(h) all leasehold interests of Grantor under the Existing Leases (each as defined in the Note), to the extent such interests constitute personal property under applicable law; and

(i) all Proceeds (including cash and noncash proceeds) and products of any and all of the foregoing, in whatever form, including insurance proceeds and all claims against third parties for loss of, damage to, or destruction of any of the foregoing.

**2.2 Exclusion from Collateral.** The Collateral shall not include any personal property of Grantor located at, used in, held for use in, or arising from or relating to the operation of any of Grantor's school locations other than the JP Location.

## ARTICLE 3 — SECURED OBLIGATIONS

**3.1 Secured Obligations.** This Agreement secures the prompt and full payment and performance of all indebtedness, obligations, liabilities, and undertakings of Grantor to Secured Party, of any kind or description, whether direct or indirect, joint or several, absolute or contingent, due or to become due, voluntary or involuntary, now existing or hereafter arising, including all principal, interest, fees (including reasonable attorneys' fees), costs, and expenses that Grantor is required to pay pursuant to the Note or this Agreement, whether accruing before or after the filing of any petition in bankruptcy or the commencement of any insolvency, reorganization, or similar proceeding relating to Grantor, whether or not a claim for post-petition interest, fees, or expenses is allowed in such proceeding (collectively, the "Secured Obligations").

4904-4349-1232.2

**ARTICLE 4 — PERFECTION OF SECURITY INTEREST**

**4.1 Authorization to File Financing Statements.** Grantor hereby irrevocably authorizes Secured Party to file one or more UCC financing statements (and any amendments, assignments, continuation statements, and termination statements relating thereto) in any filing office as Secured Party may deem necessary or desirable to perfect, continue, amend, or terminate its security interest in the Collateral. Such financing statements may describe the Collateral in the same manner as set forth in Section 2.1 hereof, or may describe the Collateral as "all personal property of the Grantor located at, used in, held for use in, or arising from or relating to the operation of The Croft School JP at 3815 Washington Street, Boston, MA 02130, together with all proceeds and products thereof," or in any other manner as Secured Party may determine is necessary or advisable to ensure the perfection of the security interest granted herein, including a description of Collateral as "all assets" to the extent Secured Party determines such description is advisable; provided, however, that the rights of Secured Party shall in all events be limited to the Collateral as defined in Section 2.1. Grantor hereby ratifies any financing statements previously filed by or on behalf of Secured Party with respect to the Collateral.

**4.2 Filing Offices.** Without limiting the generality of Section 4.1, Secured Party is specifically authorized to file financing statements with (a) the Secretary of State of the State of Delaware (as the state of organization of Grantor, and the proper filing office for perfection of a security interest in Grantor's personal property under UCC § 9-301(1)) and (b) the Secretary of the Commonwealth of Massachusetts, and in any other filing office as Secured Party may determine is necessary or advisable. To the extent that the filing of fixture filings is necessary or advisable to perfect a security interest in any fixtures included in the Collateral, Secured Party is authorized to file such fixture filings in the appropriate real property recording offices in Suffolk County, Massachusetts.

**4.3 Continuation Statements.** Secured Party is authorized to file continuation statements with respect to any financing statement filed hereunder at any time within the period of six (6) months prior to the expiration of the effectiveness of such financing statement, without the further consent or authorization of Grantor.

**4.4 Further Assurances.** Grantor agrees that at any time and from time to time, at the expense of Grantor, Grantor will promptly execute and deliver all further instruments and documents, obtain such agreements from third parties, and take all further action that may be necessary or desirable, or that Secured Party may reasonably request, in order to create, maintain, protect, and preserve the validity, perfection, or priority of the security interest granted or purported to be granted hereby, or to enable Secured Party to exercise and enforce its rights and remedies hereunder or under the Note with respect to any Collateral. Without limiting the foregoing, Grantor will:

(a) execute and deliver such instruments as Secured Party may reasonably request to perfect the security interest in the Collateral;

(b) cooperate with Secured Party in obtaining any governmental or other third-party consents, approvals, or authorizations that may be necessary or desirable to perfect, protect, or enforce the security interest granted herein;

(c) furnish to Secured Party from time to time statements and schedules further identifying and describing the Collateral and such other reports and information in connection with the Collateral as Secured Party may reasonably request, all in reasonable detail; and

(d) take all actions that may be necessary to ensure that the security interest granted herein remains a valid and perfected security interest in the Collateral, subject only to Permitted Liens.

**ARTICLE 5 — REPRESENTATIONS AND WARRANTIES**

Grantor represents and warrants to Secured Party as of the date hereof and as of the date of each Advance under the Note that:

**5.1 Organization and Authority.** Grantor is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware. Grantor's exact legal name as it appears in its certificate of formation filed with the Delaware Secretary of State is "Oxford Street Education, LLC." Grantor's organizational identification number assigned by the Delaware Secretary of State is 6493581. Grantor has full power and authority to execute, deliver, and perform its obligations under this Agreement and to grant the security interest in the Collateral as provided herein.

**5.2 Due Authorization.** The execution, delivery, and performance of this Agreement have been duly authorized by all necessary action on the part of Grantor.

**5.3 Enforceable Obligation.** This Agreement constitutes the legal, valid, and binding obligation of Grantor, enforceable against Grantor in accordance with its terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium, or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles.

**5.4 Title and Liens.** Grantor has good and marketable title to the Collateral, free and clear of all liens, claims, and encumbrances, except for Permitted Liens. Grantor has not previously assigned, pledged, or otherwise encumbered the Collateral, except for Permitted Liens.

**5.5 Location of Collateral.** All tangible Collateral is located at the JP Location or at such other locations as have been disclosed to Secured Party in writing.

**5.6 Principal Place of Business.** Grantor's principal place of business and chief executive office is located at 21 Fox Hill Road, Wellesley Hills, Massachusetts 02481.

**5.7 No Conflicting Agreements.** The execution, delivery, and performance of this Agreement and the grant of the security interest herein do not and will not conflict with, result in a breach of, or constitute a default under any agreement, instrument, or arrangement to which Grantor is a party or by which Grantor or its assets are bound, except for any conflicts arising under the Leader Bank Lien, for which no consent of Leader Bank is required in connection with the grant of a subordinate security interest hereunder.

**5.8 Completeness of Disclosure.** No representation or warranty made by Grantor in this Agreement contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements contained herein not misleading. Grantor acknowledges that its board does not have a complete picture of Grantor's overall financial condition, and Grantor is providing the representations in this Article 5 to the best of its current actual knowledge and belief.

**ARTICLE 6 — COVENANTS**

Until all Secured Obligations have been indefeasibly paid and performed in full, Grantor covenants and agrees as follows:

**6.1 Protection of Collateral.** Grantor shall maintain the Collateral in good condition and repair, ordinary wear and tear excepted, and shall not waste or destroy the Collateral or any part thereof. Grantor shall defend the Collateral against and take such other action as is necessary to remove any lien, claim, or encumbrance on or to the Collateral, other than Permitted Liens.

**6.2 Insurance.** Grantor shall maintain insurance on the Collateral against fire, theft, and other risks in such amounts and with such carriers as are customary for businesses of the type operated by Grantor, and

4904-4349-1232.2

shall name Secured Party as an additional insured and loss payee, as its interests may appear, on all such policies. Grantor shall deliver to Secured Party, upon request, evidence of such insurance coverage. In the event of any loss or damage to the Collateral, Grantor shall promptly notify Secured Party and, unless otherwise directed by Secured Party, shall apply all insurance proceeds to the repair or replacement of the damaged Collateral.

**6.3 No Transfer or Encumbrance.** Grantor shall not sell, transfer, assign, lease, license, or otherwise dispose of any material portion of the Collateral, or grant any lien, security interest, or other encumbrance on any of the Collateral, in each case without the prior written consent of Secured Party, except for (a) as set forth in the Note, (b) Permitted Liens, (c) dispositions of inventory or worn-out or obsolete equipment in the ordinary course of business, and (d) any sale or transfer to Secured Party pursuant to the Note.

**6.4 Change in Name, Identity, or Structure.** Grantor shall give Secured Party at least thirty (30) days' prior written notice of any change in (a) Grantor's legal name, (b) Grantor's state of organization, (c) Grantor's organizational identification number, or (d) Grantor's principal place of business or chief executive office. Grantor shall not effect any such change unless all filings have been made, or will be made simultaneously with such change, as may be required to maintain the perfection and priority of the security interest granted herein. Grantor shall promptly execute and deliver to Secured Party such financing statement amendments or other documents as Secured Party may request to reflect any such change and to maintain the perfection of the security interest granted herein.

**6.5 Location of Collateral.** Grantor shall not move any material portion of the tangible Collateral from the JP Location without the prior written consent of Secured Party, except in the ordinary course of business.

**6.6 Compliance with Laws.** Grantor shall comply in all material respects with all applicable laws, rules, regulations, and orders with respect to the Collateral and the operation of the School at the JP Location.

**6.7 Access and Inspection.** Grantor shall permit Secured Party and its representatives, upon reasonable advance notice and during normal business hours, to inspect and examine the Collateral, and to inspect, audit, and copy Grantor's books and records relating to the Collateral.

**6.8 Taxes and Assessments.** Grantor shall pay when due all taxes, assessments, and governmental charges levied upon the Collateral or upon the income or profits arising therefrom, unless the same are being contested in good faith by appropriate proceedings and adequate reserves have been established therefor.

**6.9 Accounts and Records.** Grantor shall keep accurate and complete books and records with respect to the Collateral in accordance with sound business practices and shall clearly indicate thereon the security interest of Secured Party.

**6.10 Notification of Account Debtors.** Upon the occurrence and during the continuance of an Event of Default, Secured Party shall have the right to notify any account debtors or other persons obligated on any of the Collateral to make payment directly to Secured Party, and Grantor shall cooperate in effectuating such notification.

## ARTICLE 7 — RIGHTS OF SECURED PARTY

**7.1 Power of Attorney.** Grantor hereby irrevocably appoints Secured Party as its attorney-in-fact, with full authority in the place and stead of Grantor and in the name of Grantor, Secured Party, or otherwise, from time to time following the occurrence and during the continuance of an Event of Default, to take any action and to execute any instrument that Secured Party may reasonably deem necessary or advisable to accomplish the purposes of this Agreement, including:

4904-4349-1232.2

(a) to file any claims or take any action or institute any proceedings that Secured Party may deem necessary or desirable for the collection of any of the Collateral or otherwise to enforce the rights of Secured Party with respect to any of the Collateral;

(b) to receive, endorse, and collect all instruments made payable to Grantor representing any payment or other distribution in respect of the Collateral;

(c) to execute, in connection with any sale or disposition of Collateral, any endorsements, assignments, or other instruments of conveyance or transfer with respect to the Collateral; and

(d) to do and perform all such other acts and things as Secured Party may deem necessary or advisable to carry out the intent and purpose of this Agreement and the Note.

This power of attorney is a power coupled with an interest and shall be irrevocable for so long as any Secured Obligations remain outstanding. Secured Party shall not exercise any rights under this Section 7.1 unless an Event of Default has occurred and is continuing.

**7.2 Performance by Secured Party.** If Grantor fails to perform any obligation hereunder, Secured Party may (but shall not be obligated to) perform, or cause performance of, such obligation, and the costs and expenses of Secured Party incurred in connection therewith shall be payable by Grantor as provided in Section 10.2 and shall constitute Secured Obligations. Secured Party's performance of any such obligation shall not relieve Grantor of any default hereunder.

## ARTICLE 8 — REMEDIES

**8.1 Remedies Upon Default.** If an Event of Default shall have occurred and be continuing, Secured Party may exercise any or all of the following rights and remedies:

(a) declare all Secured Obligations immediately due and payable (to the extent not already accelerated under the Note);

(b) exercise all rights and remedies available to a secured party under Article 9 of the UCC (whether or not the UCC applies to the affected Collateral) or under any other applicable law, including the right to:

(i) require Grantor to assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party that is reasonably convenient to both parties;

(ii) enter upon any premises where the Collateral is located and take possession of the Collateral without demand or legal process, to the extent permitted by applicable law;

(iii) sell, lease, license, or otherwise dispose of any or all of the Collateral in its then condition, or following any commercially reasonable preparation or processing, at one or more public or private sales, in lots or in bulk, for cash or on credit, all as Secured Party in its sole discretion may deem advisable;

(iv) buy the Collateral, or any portion thereof, at any public sale;

(v) buy the Collateral, or any portion thereof, at any private sale if the Collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations;

(vi) apply the Proceeds of any sale or disposition of the Collateral to the Secured Obligations in such order and manner as Secured Party may determine; and

(vii) collect any and all amounts due with respect to the Collateral, including accounts receivable, and exercise all other rights of Grantor with respect to the Collateral;

(c) exercise any and all rights under the Note, including the right to accelerate the Secured Obligations; and

(d) exercise any other rights and remedies available to Secured Party at law or in equity.

**8.2 Notice of Sale.** Unless the Collateral is perishable or threatens to decline speedily in value, or is of a type customarily sold on a recognized market, Secured Party shall give Grantor at least twenty-one (21) days' prior written notice of the time and place of any public sale, or of the time after which any private sale or other intended disposition is to be made. Grantor agrees that twenty-one (21) days' prior written notice constitutes reasonable notification for all purposes under the UCC. Secured Party shall not be obligated to make any sale of Collateral if it shall determine not to do so, regardless of the fact that notice of sale of Collateral may have been given. Secured Party may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for sale, and such sale may, without further notice, be made at the time and place to which the same was so adjourned.

**8.3 Application of Proceeds.** The Proceeds of any sale, disposition, or other realization upon all or any part of the Collateral shall be applied by Secured Party in the following order of priority:

(a) first, to the payment of all costs and expenses of such sale, disposition, or realization, including reasonable attorneys' fees and expenses, and all expenses, liabilities, and advances incurred or made by Secured Party in connection therewith;

(b) second, to the payment of the Secured Obligations in such order as Secured Party shall determine in its sole discretion; and

(c) third, to Grantor or as otherwise required by applicable law.

**8.4 Deficiency.** If the Proceeds of any sale, disposition, or other realization upon the Collateral are insufficient to satisfy the Secured Obligations in full, Grantor shall remain liable for any deficiency.

**8.5 Cumulative Remedies.** All rights and remedies of Secured Party provided in this Agreement are cumulative and in addition to, and not in limitation of, any other rights and remedies available to Secured Party under the Note, at law, in equity, or otherwise. No delay, omission, or failure on the part of Secured Party to exercise or enforce any right or remedy shall constitute an estoppel or waiver of such right or remedy or any other right or remedy. Any waiver by Secured Party of any Event of Default shall not be deemed a waiver of any subsequent Event of Default.

**8.6 Commercial Reasonableness.** Any disposition of the Collateral may be for cash or on any other terms that Secured Party deems commercially reasonable, taking into account all relevant factors, including the type and condition of the Collateral, the existence of any market for the Collateral, and the parties' interest in achieving a prompt and orderly disposition. Without limiting the foregoing, Secured Party may sell the Collateral as a going concern or as part of a bulk sale together with other assets of Grantor.

## ARTICLE 9 — RELATIONSHIP TO NOTE; BANKRUPTCY

**9.1 Relationship to Note.** This Agreement supplements and is subject to the terms and conditions of the Note. In the event of any conflict between the provisions of this Agreement and the Note, the provisions of the Note shall control.

4904-4349-1232.2

**9.2 Non-Interference with Reorganization.** Consistent with Article 8 of the Note, nothing in this Agreement is intended to, nor shall it be construed to, inhibit, restrict, or prevent Grantor from pursuing a reorganization, recapitalization, or other restructuring of its business, whether in or out of court, or from commencing or becoming subject to a case under the Bankruptcy Code.  Secured Party shall not object to or interfere with Grantor's ability or agreement to enter into and seek DIP Financing except only to the extent that such DIP Financing either (a) seeks priority over Secured Party's lien hereunder, or (b) impairs or may impair the School's ability to operate through and including June 12, 2026.  For the avoidance of doubt, the exercise by Secured Party of its rights and remedies under this Agreement upon the occurrence of an Event of Default shall not be deemed to inhibit or restrict Grantor's ability to pursue any of the foregoing.

**9.3 Roll-Up.** In the event that Grantor commences or becomes subject to a case under the Bankruptcy Code, the provisions of Section 7.3 of the Note regarding the roll-up of indebtedness into debtor-in-possession financing shall apply to the security interest granted herein, and Grantor shall use reasonable best efforts to cooperate with Secured Party to preserve, extend, or convert the security interest granted herein into a post-petition lien authorized by the bankruptcy court.

**9.4 Post-Petition Interest and Expenses.** To the extent permitted by the Bankruptcy Code or other applicable law, the Secured Obligations shall include all post-petition interest, fees, costs, and expenses incurred or accruing after the commencement of any bankruptcy, insolvency, receivership, or similar proceeding, whether or not such amounts are allowed or allowable as a claim in such proceeding.

**ARTICLE 10 — GENERAL PROVISIONS**

**10.1 Termination.** This Agreement and the security interest granted herein shall terminate and be of no further force or effect upon the indefeasible payment and performance in full of all Secured Obligations, including, without limitation, upon exercise of the Purchase Option, as defined in the Note. Upon such termination, Secured Party shall, at Grantor's expense, promptly execute and deliver to Grantor such UCC termination statements, releases, and other documents as Grantor may reasonably request to evidence the termination of the security interest granted herein, and shall take such further actions as Grantor may reasonably request to release the Collateral from the security interest.

**10.2 Costs and Expenses.** Grantor shall pay all reasonable and documented costs and expenses incurred by Secured Party in connection with the perfection, protection, and enforcement of the security interest granted herein, including all filing fees, search fees, lien search costs, and reasonable attorneys' fees. All such costs and expenses shall constitute Secured Obligations secured by this Agreement.

**10.3 Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without regard to its conflicts of law principles, except to the extent that the validity, perfection, the effect of perfection or non-perfection, or the priority of the security interest granted herein, or the availability of remedies with respect to any particular Collateral, is governed by the UCC of another jurisdiction (including, without limitation, the State of Delaware as the state of organization of Grantor), in which case the UCC of such other jurisdiction shall apply to the extent required by the UCC choice-of-law rules set forth in Mass. Gen. Laws ch. 106, §§ 9-301 through 9-307.

**10.4 Severability.** If any provision of this Agreement is declared by a court of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision hereof, which shall to the fullest extent possible remain in full force and effect.

**10.5 Amendments.** This Agreement may not be amended, modified, or supplemented except by a written instrument signed by both Grantor and Secured Party.

4904-4349-1232.2

**10.6 Notices.** Any notice or demand required or permitted to be made or given under this Agreement shall be in writing and shall be deemed duly served if (a) delivered personally, (b) sent by certified or registered mail, return receipt requested, postage prepaid, or (c) sent by nationally recognized overnight courier service, addressed as follows:

If to Grantor:

Oxford Street Education, LLC 21 Fox Hill Road Wellesley Hills, Massachusetts 02481

If to Secured Party:

Friends of JP Education, Inc., 260 Franklin Street, Suite 1860, Boston, MA 02110, Attention: Jake WalkerEither party may change its address by written notice to the other party in accordance with this Section 10.6.

**10.7 Successors and Assigns.** This Agreement shall be binding upon Grantor and its successors and assigns, and shall inure to the benefit of Secured Party and its successors and assigns. Grantor shall not assign this Agreement or any of its obligations hereunder without the prior written consent of Secured Party. Secured Party may assign its rights under this Agreement in connection with any assignment of the Note.

**10.8 Entire Agreement.** This Agreement, together with the Note and the Schedule of Advances (as defined in the Note), constitutes the entire agreement between Grantor and Secured Party with respect to the subject matter hereof and supersedes all prior negotiations, representations, warranties, commitments, offers, and agreements relating to such subject matter.

**10.9 Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Delivery of an executed counterpart by electronic transmission (including by PDF or other electronic signature) shall be effective as delivery of a manually executed original.

**10.10 Waiver of Jury Trial.** TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

**10.11 Reinstatement.** This Agreement shall continue to be effective, or be reinstated, as the case may be, if at any time payment, or any part thereof, of any of the Secured Obligations is rescinded or must otherwise be restored or returned by Secured Party upon the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Grantor or upon the appointment of any receiver, intervenor, conservator, trustee, or similar officer for Grantor or any substantial part of Grantor's assets, or otherwise, all as though such payments had not been made.

*[Signature Page Follows]*

4904-4349-1232.2

**IN WITNESS WHEREOF**, the undersigned Grantor and Secured Party have executed this Security Agreement as of the date first above written.

**GRANTOR:**

**OXFORD STREET EDUCATION, LLC** d/b/a The Croft School

By: _____

Name: Rishi Shukla

Title: Manager

Date: April 12, 2026

By: Jack Remondi _____

Name: Jack Remondi

Title: Manager

Date: April 13, 2026

**SECURED PARTY:**

Friends of JP Education, Inc.

By: _____

Name: Tim Cummings

Title: President

Date: Apr. 13, 2026

4904-4349-1232.2

EXHIBIT C

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**Delaware Department of State**
**U.C.C. Filing Section**
**Filed: 03:31 PM 04/24/2026**
**U.C.C. Initial Filing No: 2026 3269764**

**Service Request No:  20262023009**

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT SUBMITTER (optional) | |
| B. E-MAIL CONTACT AT SUBMITTER (optional) | |
| C. SEND ACKNOWLEDGMENT TO:  (Name and Address) | |

Friends of JP Education, Inc.
260 Franklin Street, Suite 1860
Boston, MA 02110
Attention: Jake Walker

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

**Print**    **Reset**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Oxford Street Education, LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange St. | Wilmington | DE / 19801 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| The Croft School | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 21 Fox Hill Road | Wellesley Hills | MA / 02481 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Friends of JP Education, Inc. | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 260 Franklin Street, Suite 1860 | Boston | MA / 02110 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All of the Debtor's property and assets located at 3815 Washington Street, Boston, MA 02130 as more fully described in Exhibit A attached hereto.

| | |
|---|---|
| 5. Check only if applicable and check only one box:   Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative |
| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
| ☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien   ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor | |
| 8. OPTIONAL FILER REFERENCE DATA: File with DE Secretary of State  324599.0001 | |

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

EXHIBIT A

DEBTOR:              OXFORD STREET EDUCATION, LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

THE CROFT SCHOOL
21 Fox Hill Road
Wellesley Hills, MA 02481

SECURED PARTY:    FRIENDS OF JP EDUCATION, INC.
260 Franklin Street, Suite 1860
Boston, MA 02110

All of the following property, assets, and rights of Debtor, in each case to the extent located at, used in, held for use in, or arising from or relating to the operation of The Croft School JP (the "School") at 3815 Washington Street, Boston, MA 02130 (the "JP Location"), whether now owned or hereafter acquired, and all Proceeds and products thereof (collectively, the "Collateral"):

(a) all goods, including all equipment, furniture, fixtures, and inventory, located at or used in connection with the JP Location;

(b) all accounts and accounts receivable arising from or related to the operation of the School at the JP Location, including all tuition receivables, fee receivables, and other amounts owing from students, parents, or other third parties in connection with the JP Location;

(c) all instruments (including promissory notes), documents (whether tangible or electronic), and chattel paper (whether tangible or electronic), in each case arising from or related to the operation of the School at the JP Location;

(d) all general intangibles arising from or related to the operation of the School at the JP Location, including all intellectual property, trade names (including the name "The Croft School JP" and any variations thereof), curricula, educational materials, student lists, enrollment records, goodwill, and going-concern value associated with the School at the JP Location;

(e) all deposit accounts into which funds arising from the operation of the School at the JP Location are deposited;

(f) all books and records relating to the JP Location, the JP Assets (as set forth in a certain Bridge Promissory Note dated March 30, 2026 in favor of the Secured Party, in the principal amount of up to $1,500,000 (the "Note")), and any of the foregoing Collateral;

(g) all insurance policies and insurance proceeds relating to any of the foregoing Collateral;

324599/0001/4927-7717-6740.2

(h) all leasehold interests of Debtor under the Existing Leases (each as defined in the Note), to the extent such interests constitute personal property under applicable law; and

(i) all Proceeds (including cash and noncash proceeds) and products of any and all of the foregoing, in whatever form, including insurance proceeds and all claims against third parties for loss of, damage to, or destruction of any of the foregoing.

324599/0001/4927-7717-6740.2