**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 26-11334 |
| OXFORD STREET EDUCATION, LLC, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

**MOTION OF BONDHOLDERS TO CONDUCT EXAMINATIONS**
**PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

The approximately 90 bondholders identified in the *Verified Statement of Troutman Pepper Locke LLP Pursuant to Federal Rule of Bankruptcy Procedure 2019* (collectively, the "Bondholders"), parties in interest and creditors Oxford Street Education, LLC (the "Debtor"), through their undersigned counsel, file this *Motion to Conduct Examinations pursuant to Federal Rule of Bankruptcy Procedure 2004* (this "Motion"). In support of their Motion, the Bondholders respectfully state as follows:

## INTRODUCTION

1. This Motion is brought on behalf of individuals who entrusted their savings—and their children's education—to an institution that repaid that trust with fraud. The Bondholders are parents who worked hard and saved so their children could attend the Croft School. They are grandparents who invested retirement funds to give their grandchildren a better start. They are teachers who poured not only their professional lives, but their personal finances into an institution they believed in. They are friends and community members who purchased "Croft Bonds" because they were told their money would sustain and strengthen schools in their community. Today, those Bondholders are the Debtor's largest constituency of unsecured

creditors, holding approximately $13 million in claims—and they are the ones left to bear the heaviest consequences of Debtor’s deception.

2. The Debtor operated the Croft School, a network of elementary schools in Boston and Providence. For years, the Debtor solicited investments from parents, educators, and members of the school community, marketing so-called “Croft Bonds” as mission-driven contributions dedicated to the betterment and continued operation of the schools. The Bondholders purchased these instruments in good faith, believing their funds would be deployed to support the education of the children they loved and expansion of the schools so their children could stay enrolled into their later elementary school years. That belief was deliberately cultivated—and it was false. In reality, the Croft Bonds were instruments of a multi-year, multi-million-dollar fraudulent financing scheme: a Ponzi-like structure designed not to sustain the schools, but to prop up the Debtor's deteriorating finances while enriching the Debtor and its Board of Managers at the direct expense of the very community the schools purported to serve.

3. In March 2026, the Debtor’s scheme publicly unraveled, precipitating the schools’ demise and leaving hundreds of families and their children in sudden upheaval. Students lost their school. Parents lost the community they had built. Teachers lost their livelihoods and job security. And the Bondholders—the parents, grandparents, teachers, and friends who had invested out of loyalty and love—were left holding the largest losses. For some, the Croft Bonds represented a modest but meaningful investment. For others, the Croft Bonds constituted a significant portion of their life savings. In every case, the loss was compounded by the betrayal: these were not arms-length investors accepting market risk, but members of a school community who were induced to invest by the very institution charged with educating their children.

4. To protect their interests and their claims, the Bondholders seek authority to conduct examinations of certain parties already subject to examination by the Trustee who possess information material to the Debtor's financial condition, liabilities, and pre-petition conduct. These examinations are necessary to ensure that the Bondholders, as the Debtor's largest body of unsecured creditors and the principal victims of its fraud, have a meaningful voice in the administration of this case and a fair opportunity to pursue the recoveries to which they are entitled.

**BACKGROUND**

5. Prior to the Petition Date, the Debtor operated for-profit elementary schools in Massachusetts and Rhode Island (the "Schools").

6. In 2023, the Debtor began selling "Croft Bonds," which were marketed as mission-driven contributions for the betterment of and construction of the Schools. The Debtor, through founder Scott Given, represented that the Croft Bonds were secured by an alleged "financial support fund" that would maintain at least $4 million in cash at all times. Apparently, no financial support fund ever existed.

7. The Bondholders purchased the Croft Bonds pursuant to various Promissory Notes (the "Notes"). The Notes provided that the Bondholders would receive annual interest until the amount of the Croft Bonds were paid in full.

8. In March 2026, it became clear that the Croft Bonds were a scheme used to defraud families and investors of millions of dollars for the benefit of Debtor, its principal, and its Board of Managers. Proceeds of the Croft Bonds—including those loaned by the Bondholders—were not used for their intended purpose. Not only were the proceeds of the Croft Bonds gone, but the School was insolvent, and eventually had to close its doors.

9. On June 5, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Harold B. Murphy was appointed as Chapter 7 trustee (the "Trustee").

10. The Trustee conducted the meeting of creditors pursuant to section 341 of the Bankruptcy Code on August 19, 2026. The meeting was further continued to October 20, 2026 giving the Trustee time to review additional documents expected to be received.

11. Each of the Bondholders has timely filed a Proof of Claim in this case.

12. The Trustee has filed nine (9) motions seeking to conduct examinations of parties pursuant to Federal Rule of Bankruptcy Procedure 2004, as follows (collectively, the "Examinees"):

a. All-In Accounting Solutions, LLC [Docket No. 97] ("All-In Accounting");
b. AAFCPA, Inc. [Docket No. 98] ("AAFCPA");
c. Andrew Solomon, as designee of Measured Moxie Consulting LLC [Docket No. 113] ("Measured Moxie");
d. On Deck Capital, Inc. [Docket No. 115] ("On Deck");
e. Jack Remondi [Docket No. 134] ("Remondi");
f. Robert Lytle [Docket No. 135] ("Lytle");
g. Kate Mahoney [Docket No. 136] ("Mahoney");
h. Michael Goldstein [Docket No. 137] ("Goldstein"); and
i. Rishi Shukla [Docket No. 138] ("Shukla").

13. This Court granted the Trustee's motions as to All-In Accounting, AAFCPA, Measured Moxie, and On Deck. Pursuant to a stipulation approved by the Court on October 15, 2026, the Trustee's motions with respect to Remondi, Lytle, Goldstein, and Shukla were withdrawn. The Court has not yet ruled on the motion with respect to Mahoney.

14. By this Motion, the Bondholders seek to conduct corresponding Rule 2004 examinations of each of the Examinees. The Bondholders propose coordinating with the Trustee to avoid duplication of productions and to conduct a single examination.

**THE BONDHOLDERS ARE ENTITLED TO DISCOVERY**

27. As the largest group of unsecured creditors of the Debtor's estate, the Bondholders manifestly have standing to pursue discovery under Fed. R. Bankr. P. 2004. Rule 2004 is unfettered and broad. *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr. D. Mass. 1983). The scope of discovery permitted thereunder has been equated to a "fishing expedition," so long as the party taking discovery is "fishing" for matters related to the debtor's assets, liabilities, and financial affairs. *Id.* at 453; *see In re Youk-See*, 450 B.R. 312, 319 (Bankr. D. Mass. 2011) ("Courts recognize that the permitted scope of a Rule 2004 examination is extremely broad.").

28. The determination to permit a creditor to pursue a 2004 examination lies in the sound discretion of the Court, and upon the finding of good cause to protect a creditor's interests. *In re Fin. Oversight & Mgmt. Bd. for P.R.*, Case No. 17-BK-3283, 2020 U.S. Dist. LEXIS 196800, at *8-9 (D. P.R. Oct. 19, 2020) ("Good cause is established if the one seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the protection of its legitimate interests") (quoting *In re Hammond*, 140 B.R. 197, 201 (Bankr. S.D. Ohio 199)).

29. The Bondholders propose to take documentary and testimonial discovery from the Examinees, as set forth in the requests attached hereto as **Exhibits A through I** (the "Discovery Requests"), which are substantively commensurate with the Trustee's Discovery Requests that this Court has either already allowed or is in the process of reviewing. With respect to the withdrawn motions, the Bondholders' proposed Discovery Requests are substantively commensurate with those Requests the Trustee initially proposed. In essence, the Bondholders seek to participate in the same discovery sought by the Trustee.

30. The Discovery Requests are necessary for the Bondholders to assess key aspects relating to the Debtor's financial status, liabilities, and assets in order to properly protect their Claims. The requested discovery should be permitted to go forward.

## RESERVATION OF RIGHTS

31. For the avoidance of doubt, the Bondholders expressly reserve the right to seek additional examinations pursuant to Rule 2004 of additional examinees, if and when appropriate. Limiting this Motion to the Examinees identified herein is not intended to, and shall not be construed as, a waiver of the Bondholders' right to seek further examinations.

**WHEREFORE**, the Bondholders respectfully request that this Court enter an order:

(i) Authorizing the Bondholders to conduct an examination of the Examinees, pursuant to Fed. R. Bankr. P. 2004, concerning all matters within the scope of that rule, including but not limited to the topics set forth in the Discovery Requests;

(ii) Authorizing the Bondholders, pursuant to Fed. R. Bankr. P. 2004, to subpoena documents from the Examinees concerning all matters within the scope of that rule, including but not limited to the topics set forth in the Discovery Requests;

(iii) Authorizing the Bondholders to subpoena the Examinees for deposition pursuant to Fed. R. Bankr. P. 2004, concerning all matters within the scope of that rule, including but not limited to the topics set forth in the Discovery Requests; and

(iv) Requiring the Examinees and/or Trustee to turn over to the Bondholders any and all documents produced by the Examinees in response to the Trustee's Discovery Requests;

(v) Requiring that the Trustee and Bondholders coordinate to ensure that single examination of each Examinee is scheduled for a mutually agreeable date/time.

(vi) Granting such other and further relief as may be just and fitting under the circumstances.

Dated: October 19, 2026

Respectfully submitted,
CROFT BONDHOLDERS

*/s/ Hanna J. Redd*

Jonathan W. Young (BBO #569081)
David E. Fialkow (BBO #666192)
Hanna J. Redd (BBO #705222)
**TROUTMAN PEPPER LOCKE LLP**
111 Huntington Ave., 9th Floor
Boston, MA 02199
Tel: 617-239-0100
Email: jonathan.young@troutman.com
david.fialkow@troutman.com
hanna.redd@ltroutman.com

**CERTIFICATE OF SERVICE**

I, Hanna J. Redd, do hereby certify that on October 19, 2026, I caused a copy of the foregoing to be served through the ECF system, and that copies will be sent electronically to registered participants, and paper copies will be sent to those indicated as non-registered participants requesting notice as of the date herein.

Dated: October 19, 2026

*/s/ Hanna J. Redd*
Hanna J. Redd

**Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>OXFORD ST. EDUCATION, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 26-11334-JEB |

**EXHIBIT A TO RULE 2004 SUBPOENA TO**
**ALL-IN ACCOUNTING SOLUTIONS, LLC**

Pursuant to Federal Rule of Bankruptcy Procedure 2004, certain Croft Bondholders (the "Bondholders") hereby demand that All-In Accounting Solutions, LLC produce documents responsive to the requests set forth herein (such requests, the "Document Requests"), by delivering all such responsive Documents to **Troutman Pepper Locke LLP, 111 Huntington Ave., 9th Floor, Boston, MA 02199, Attn: Jonathan W. Young (jonathan.young@troutman.com), David E. Fialkow (david.fialkow@troutman.com), and Hanna J. Redd (hanna.redd@troutman.com)**, counsel for the Bondholders, within 14 days of service hereof in accordance with the Instructions set forth below.

The Bondholders reserve the right to supplement or revise these Document Requests based upon the Documents produced in response to discovery or any pleadings filed in the above-referenced case on or after the date of these Document Requests.

## DEFINITIONS

The following definitions shall apply to the terms used in these Document Requests, regardless of whether they are capitalized or uncapitalized:

A. The term "any" shall mean "each and every" as well as "any one."

B. "All-In Accounting" means All-In Accounting Solutions, LLC.

C. "Bankruptcy Proceeding" shall mean the above-captioned chapter 7 case.

D. "Board" shall mean the Board of Managers of the Debtor, at various times comprised of Scott Given, Michael Goldstein, Robert Lytle, John Remondi, and Rishi Shukla.

E. "Board Member" shall mean each individual serving on the Board of the Debtor.

F. "Communication" means the transmittal or exchange of information, in any form and by any means, Including, documents, writings, letters, notes, face-to-face conversations, telephone conversations, meetings, conferences, correspondence, electronic mail, text message, sound recordings, video recordings, instant messages, or other exchange of information in any form. Communication includes all transfers, including electronic transfers, transfers of information stored on computer disk or computer memory, and memoranda to file.

G. "Concerning" means related to, referring to, describing, evidencing, constituting, discussing, embodying, regarding, showing, or stating the subject matter identified. This definition shall apply to all forms of the word "concerning."

H. "Croft Bonds" means any and all debt instruments, obligations, or investment interests issued, offered, sold, solicited, executed, renewed, or amended, in whole or in part, by or on behalf of Debtor or any Croft School, from January 1, 2022 through the present, including, but not limited to, any instrument referred to as a "Croft Bond" or as part of the "Croft Bond program." The term includes any form of instrument or documentation, however titled, including promissory notes, "line of credit agreements," bridge loans, "short-term investment[s]," and notes convertible into equity, as well as any obligation evidenced only by email, text message, online form, check, wire, accounting record, or oral agreement. The term covers instruments held by any person or entity, including current or former parents, grandparents, and other family members of students; students; teachers, nurses, administrators, and other employees; members of Oxford's Board of

Managers and their relatives; friends, community members, and equity investors; and any trust, LLC, or other entity. The term applies regardless of term length, interest rate, purported collateral (including any Leader Bank account or "financial support fund"), any per-family or aggregate cap, governing law, or the place of offer or sale. It also applies whether the instrument was executed, funded, repaid, withdrawn, defaulted, or remains outstanding, and whether or not it was recorded in Debtor's books or disclosed to, approved by, or known to the Board of Managers. Calling an instrument a "loan," "bridge loan," "donation," "contribution," "investment," or anything else does not remove it from this definition.

I. "Debtor" shall mean Oxford St. Education, LLC.

J. "Document(s)" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure, and includes, but is not limited to, all originals, non-identical copies and copies with marginal notations or interlineations of any written Communications, writings, sworn statements, deposition transcripts, affidavits, recordings, photographs, phone records, computer data, electronic mail or other item containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form maintained. The term Document also includes all Electronically Stored Information. The term Document further means any document in the possession, custody or control of the entities and individuals to whom these Interrogatories are directed (together with any, employees, agents, and attorneys). Without limitation to the term "control" as used in the preceding sentence, an entity or individual is deemed to be in control of a document if that entity or individual has the right to secure the document or a copy thereof from another entity or individual having actual possession thereof.

K. "Including" means including, without limitation or including, but not limited to.

L. "Person" includes both the singular and the plural, and means any natural person, business entity, corporation, cooperative, public corporation, partnership, joint venture, or organization.

M. "You" or "Your" means All-In Accounting, or any affiliates, agents, assigns, directors, employees, officers, partners, representatives, subsidiaries, or any other person acting or purporting to act on her behalf, and any predecessor or successor of the foregoing.

N. As used herein, the singular includes the plural and the plural includes the singular; the conjunctive includes the disjunctive and the disjunctive includes the conjunctive; the masculine includes the feminine and the feminine includes the masculine; and the present tense includes the past tense and the past tense includes the present tense so as to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

O. As used herein, the connectives "and" and "or" as used in the term "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

## INSTRUCTIONS

I. You are instructed to produce all Documents responsive to the Document Requests that are within your possession, custody, or control, or in the possession, custody or control of any other Person or entity acting or purporting to act on your behalf. In responding to these requests, You are to review and search all relevant files of appropriate entities and Persons.

II. Unless otherwise specified, the time period covered by these Document Requests is the period from January 1, 2019 to the present, Including any Documents or materials that were created, referred to, or used in that period. The Document Requests may also reference events before this period.

III. Each Document Request shall be responded to completely, separately, and fully. If there are no Documents responsive to any particular request, your response shall state so in writing.

IV. If, in responding to the Document Requests, you encounter any ambiguities when construing a request or definition, your response shall set forth the matter deemed ambiguous and the construction used in responding.

V. Each request for the production of Documents shall be deemed to be continuing in nature. If at any time additional Documents come into your possession, custody, or control or are brought to your attention, you will promptly supplement your response to these Document Requests.

VI. Where appropriate, the singular form of a word should be interpreted in the plural, and vice versa, to obtain the broadest possible meaning.

VII. If any portion of any document is responsive to any of these requests, the entire document shall be produced, including all attachments, appendices, and exhibits thereto.

VIII. All Documents shall be produced in the manner in which they are maintained in the usual course of your business and/or you shall organize and label the Documents to correspond to each request contained herein. A request for a Document shall be deemed to include a request for any and all file folders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself. Documents attached to each other shall not be separated.

IX. You shall produce all Electronically Stored Information in accordance with the following specifications:

(i) Form of Production. Produce electronically stored information in single-page tiff format (Group IV tiff at 300 dpi) with standard Concordance formatted load file (.dat), including all metadata. Name each tiff file with a unique name matching the bates number labeled on the corresponding page.

Group every 10,000 tiffs into a new folder; do not create a separate folder for each Document.

(ii) Image Load File. Provide an image load file Opticon file (.opt) that contains Document boundaries, page counts, and volume information.

(iii) Document Text. For documents that were originally stored as native electronic files and which do not have redactions, produce the extracted full text (not OCR) from the body of each Document in separate document-level *.txt files named for the beginning bates number of the associated Document. Provide OCR text for Documents without extracted text available (non-searchable PDFs, etc.). Group 1,000 document text files per incrementally named "TEXT" directories, separate from image directories. For Documents that were originally stored as native electronic files and which have redactions, produce the OCR text from the redacted image(s) associated with each Document, in separate document-level *.txt files named for the beginning bates number of the associated Document. Clearly label any redacted material to show the redactions on the tiff image. Also provide a comma-delimited extracted text list file with each Document's beginning bates number along with the path to the associated extracted text/OCR text file.

(iv) Native Production for Certain File Types. For files created by Excel or other spreadsheet programs, PowerPoint, or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats. Name the produced native file with the bates number on the first page of the corresponding tiff production of the file/document. Group native files within incrementally named "NATIVE" directories, separate from images directories.

(v) De-duplication. Produce a single copy of each electronic document for which exact duplicates exist. For e-mail messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties. For e-mail attachments and stand-alone electronic files, consolidate duplicates based on MD5 hash of the entire file.

(vi) Metadata. Produce extracted metadata for each document in the form of a Concordance load file (.dat), including the following field (where applicable): bates range begin, bates range end, bates family range begin, bates family range end, e-mail subject lie, file name, e-mail sent date, e-mail sent time, received date, received time, created date, created time, last modified date, last modified time, author, from, to, CC, BCC, custodian, source, source folder, page count, MD5 hash value, native file path location, and confidentiality designation. Documents shall be produced in such

fashion as to identify the location of the Document and, where applicable, the natural person or custodian in whose possession it was found.

X. All Documents produced should be bates numbered sequentially, with a unique number on each page.

XI. Any Document withheld from production based on privilege or any similar claim shall be identified by (i) the type of document, (ii) the general subject matter of the Document, (iii) the date of the Document, and (iv) such other information as is sufficient to identify the Document, including the author of the Document, the addressee of the Document, other recipients of the Document and, where not apparent, the relationship of the author and the addressee to each other. The nature of each claim of privilege shall be set forth. If a portion of a Document contains information subject to a claim of privilege, only that portion shall be redacted and the remainder shall be produced.

XII. If any Document within the scope of these Document Requests has been modified or altered in any way, including in part, identify (i) each such Document; (ii) its custodian; and (iii) the person who modified or altered it. The circumstances of such modification or alteration shall be set forth, including how and why the Document was modified or altered.

XIII. All references to a Document include such Document as it may be amended, modified, updated or otherwise supplemented, including after the date hereof.

XIV. If any Document within the scope of these Document Requests is no longer in your possession or subject to your control, state whether it is (i) missing or lost; (ii) destroyed; (iii) transferred voluntarily or involuntarily to others; or (iv) otherwise disposed of. In each instance, identify the current or last known custodian and the circumstances surrounding such disposition.

XV. If you object to any part of any Document Request, you shall state fully the nature of the objection. Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the Document Request not objected to.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

1. All financial statements of the Debtor prepared, compiled, reviewed, or maintained by You, including but not limited to balance sheets, income statements, statements of cash flow, and statements of members' equity.

2. All work papers relating to or concerning the preparation of balance sheets, income statements, statements of cash flow, and statements of members' equity.

3. All Documents furnished by any third party to All-In Accounting relating to or in connection with the Debtor or its balance sheets, income statements, statements of cash flow, and statements of members' equity.

4. All management reports, financial summaries, budgets, forecasts, and variance analyses prepared for or provided to the Debtor's officers or board of managers.

5. All work papers, supporting schedules, reconciliations, and other underlying documentation relating to the preparation of any of the Documents requested in requests 1 through 5 above.

6. All-In Accounting internal communications concerning or relating to the Debtor including but not limited to memoranda, and electronic mail between any officer or member of the board of managers of the Debtor.

7. All Communications by and among All-In Accounting and any officer or member of the board of managers of the Debtor.

8. All Communications by and among All-In Accounting and any third party relating to or concerning the Debtor.

9. All Documents relating to or concerning the Debtor's solicitation and or issuance of investment or offering of securities, bonds or other debt instruments, such as the Croft Bonds, including without limitation any private placement memoranda, subscription agreements, offering documents, investor communications, and related financial analyses or valuations.

Dated: October 19, 2026

Respectfully submitted,
**CROFT BONDHOLDERS**

*/s/*
Jonathan W. Young (BBO #569081)
David E. Fialkow (BBO #666192)
Hanna J. Redd (BBO #705222)
**TROUTMAN PEPPER LOCKE LLP**
111 Huntington Ave., 9th Floor
Boston, MA 02199
Tel: 617-239-0100
Email: jonathan.young@troutman.com
david.fialkow@troutman.com
hanna.redd@troutman.com

# **Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>OXFORD ST. EDUCATION, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 26-11334-JEB |

**EXHIBIT A TO RULE 2004 SUBPOENA TO AAFCPA, INC.**

Pursuant to Federal Rule of Bankruptcy Procedure 2004, certain Croft Bondholders (the "Bondholders") hereby demand that AAFCPA, Inc. produce documents responsive to the requests set forth herein (such requests, the "Document Requests"), by delivering all such responsive Documents to **Troutman Pepper Locke LLP, 111 Huntington Ave., 9th Floor, Boston, MA 02199, Attn: Jonathan W. Young (jonathan.young@troutman.com), David E. Fialkow (david.fialkow@troutman.com), and Hanna J. Redd (hanna.redd@troutman.com)**, counsel for the Bondholders, within 14 days of service hereof in accordance with the Instructions set forth below.

The Bondholders reserve the right to supplement or revise these Document Requests based upon the Documents produced in response to discovery or any pleadings filed in the above-referenced case on or after the date of these Document Requests.

**DEFINITIONS**

The following definitions shall apply to the terms used in these Document Requests, regardless of whether they are capitalized or uncapitalized:

A. The term "any" shall mean "each and every" as well as "any one."

B. "AAFCPA" shall mean AAFCPA, Inc.

C. "Bankruptcy Proceeding" shall mean the above-captioned chapter 7 case.

D. "Board" shall mean the Board of Managers of the Debtor, at various times comprised of Scott Given, Michael Goldstein, Robert Lytle, John Remondi, and Rishi Shukla.

E. "Board Member" shall mean each individual serving on the Board of the Debtor.

F. "Communication" means the transmittal or exchange of information, in any form and by any means, Including, documents, writings, letters, notes, face-to-face conversations, telephone conversations, meetings, conferences, correspondence, electronic mail, text message, sound recordings, video recordings, instant messages, or other exchange of information in any form. Communication includes all transfers, including electronic transfers, transfers of information stored on computer disk or computer memory, and memoranda to file.

G. "Concerning" means related to, referring to, describing, evidencing, constituting, discussing, embodying, regarding, showing, or stating the subject matter identified. This definition shall apply to all forms of the word "concerning."

H. "Croft Bonds" means any and all debt instruments, obligations, or investment interests issued, offered, sold, solicited, executed, renewed, or amended, in whole or in part, by or on behalf of Debtor or any Croft School, from January 1, 2022 through the present, including, but not limited to, any instrument referred to as a "Croft Bond" or as part of the "Croft Bond program." The term includes any form of instrument or documentation, however titled, including promissory notes, "line of credit agreements," bridge loans, "short-term investment[s]," and notes convertible into equity, as well as any obligation evidenced only by email, text message, online form, check, wire, accounting record, or oral agreement. The term covers instruments held by any person or entity, including current or former parents, grandparents, and other family members of students; students; teachers, nurses, administrators, and other employees; members of Oxford's Board of

Managers and their relatives; friends, community members, and equity investors; and any trust, LLC, or other entity. The term applies regardless of term length, interest rate, purported collateral (including any Leader Bank account or "financial support fund"), any per-family or aggregate cap, governing law, or the place of offer or sale. It also applies whether the instrument was executed, funded, repaid, withdrawn, defaulted, or remains outstanding, and whether or not it was recorded in Debtor's books or disclosed to, approved by, or known to the Board of Managers. Calling an instrument a "loan," "bridge loan," "donation," "contribution," "investment," or anything else does not remove it from this definition.

I. "Debtor" shall mean Oxford St. Education, LLC.

J. "Document(s)" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure, and includes, but is not limited to, all originals, non-identical copies and copies with marginal notations or interlineations of any written Communications, writings, sworn statements, deposition transcripts, affidavits, recordings, photographs, phone records, computer data, electronic mail or other item containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form maintained. The term Document also includes all Electronically Stored Information. The term Document further means any document in the possession, custody or control of the entities and individuals to whom these Interrogatories are directed (together with any, employees, agents, and attorneys). Without limitation to the term "control" as used in the preceding sentence, an entity or individual is deemed to be in control of a document if that entity or individual has the right to secure the document or a copy thereof from another entity or individual having actual possession thereof.

K. "Including" means including, without limitation or including, but not limited to.

L. "Person" includes both the singular and the plural, and means any natural person, business entity, corporation, cooperative, public corporation, partnership, joint venture, or organization.

M. "Tax Returns" shall mean all Federal and State Income Tax Returns of the Debtor.

N. "You" or "Your" means AAFCPA, Inc., or any affiliates, agents, assigns, directors, employees, officers, partners, representatives, subsidiaries, or any other person acting or purporting to act on her behalf, and any predecessor or successor of the foregoing.

O. As used herein, the singular includes the plural and the plural includes the singular; the conjunctive includes the disjunctive and the disjunctive includes the conjunctive; the masculine includes the feminine and the feminine includes the masculine; and the present tense includes the past tense and the past tense includes the present tense so as to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

P. As used herein, the connectives "and" and "or" as used in the term "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

## INSTRUCTIONS

I. You are instructed to produce all Documents responsive to the Document Requests that are within your possession, custody, or control, or in the possession, custody or control of any other Person or entity acting or purporting to act on your behalf. In responding to these requests, You are to review and search all relevant files of appropriate entities and Persons.

II. Unless otherwise specified, the time period covered by these Document Requests is the period from January 1, 2019 to the present, Including any Documents or materials that were

created, referred to, or used in that period. The Document Requests may also reference events before this period.

III. Each Document Request shall be responded to completely, separately, and fully. If there are no Documents responsive to any particular request, your response shall state so in writing.

IV. If, in responding to the Document Requests, you encounter any ambiguities when construing a request or definition, your response shall set forth the matter deemed ambiguous and the construction used in responding.

V. Each request for the production of Documents shall be deemed to be continuing in nature. If at any time additional Documents come into your possession, custody, or control or are brought to your attention, you will promptly supplement your response to these Document Requests.

VI. Where appropriate, the singular form of a word should be interpreted in the plural, and vice versa, to obtain the broadest possible meaning.

VII. If any portion of any document is responsive to any of these requests, the entire document shall be produced, including all attachments, appendices, and exhibits thereto.

VIII. All Documents shall be produced in the manner in which they are maintained in the usual course of your business and/or you shall organize and label the Documents to correspond to each request contained herein. A request for a Document shall be deemed to include a request for any and all file folders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself. Documents attached to each other shall not be separated.

IX. You shall produce all Electronically Stored Information in accordance with the following specifications:

(i) Form of Production. Produce electronically stored information in single-page tiff format (Group IV tiff at 300 dpi) with standard Concordance formatted load file (.dat), including all metadata. Name each tiff file with a unique name matching the bates number labeled on the corresponding page. Group every 10,000 tiffs into a new folder; do not create a separate folder for each Document.

(ii) Image Load File. Provide an image load file Opticon file (.opt) that contains Document boundaries, page counts, and volume information.

(iii) Document Text. For documents that were originally stored as native electronic files and which do not have redactions, produce the extracted full text (not OCR) from the body of each Document in separate document-level *.txt files named for the beginning bates number of the associated Document. Provide OCR text for Documents without extracted text available (non-searchable PDFs, etc.). Group 1,000 document text files per incrementally named "TEXT" directories, separate from image directories. For Documents that were originally stored as native electronic files and which have redactions, produce the OCR text from the redacted image(s) associated with each Document, in separate document-level *.txt files named for the beginning bates number of the associated Document. Clearly label any redacted material to show the redactions on the tiff image. Also provide a comma-delimited extracted text list file with each Document's beginning bates number along with the path to the associated extracted text/OCR text file.

(iv) Native Production for Certain File Types. For files created by Excel or other spreadsheet programs, PowerPoint, or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats. Name the produced native file with the bates number on the first page of the corresponding tiff production of the file/document. Group native files within incrementally named "NATIVE" directories, separate from images directories.

(v) De-duplication. Produce a single copy of each electronic document for which exact duplicates exist. For e-mail messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties. For e-mail attachments and stand-alone electronic files, consolidate duplicates based on MD5 hash of the entire file.

(vi) Metadata. Produce extracted metadata for each document in the form of a Concordance load file (.dat), including the following field (where applicable): bates range begin, bates range end, bates family range begin, bates family range end, e-mail subject lie, file name, e-mail sent date, e-mail sent time, received date, received time, created date, created time, last

> modified date, last modified time, author, from, to, CC, BCC, custodian, source, source folder, page count, MD5 hash value, native file path location, and confidentiality designation. Documents shall be produced in such fashion as to identify the location of the Document and, where applicable, the natural person or custodian in whose possession it was found.

X. All Documents produced should be bates numbered sequentially, with a unique number on each page.

XI. Any Document withheld from production based on privilege or any similar claim shall be identified by (i) the type of document, (ii) the general subject matter of the Document, (iii) the date of the Document, and (iv) such other information as is sufficient to identify the Document, including the author of the Document, the addressee of the Document, other recipients of the Document and, where not apparent, the relationship of the author and the addressee to each other. The nature of each claim of privilege shall be set forth. If a portion of a Document contains information subject to a claim of privilege, only that portion shall be redacted and the remainder shall be produced.

XII. If any Document within the scope of these Document Requests has been modified or altered in any way, including in part, identify (i) each such Document; (ii) its custodian; and (iii) the person who modified or altered it. The circumstances of such modification or alteration shall be set forth, including how and why the Document was modified or altered.

XIII. All references to a Document include such Document as it may be amended, modified, updated or otherwise supplemented, including after the date hereof.

XIV. If any Document within the scope of these Document Requests is no longer in your possession or subject to your control, state whether it is (i) missing or lost; (ii) destroyed; (iii) transferred voluntarily or involuntarily to others; or (iv) otherwise disposed of. In each instance, identify the current or last known custodian and the circumstances surrounding such disposition.

XV. If you object to any part of any Document Request, you shall state fully the nature of the objection. Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the Document Request not objected to.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

1. All financial statements of the Debtor prepared, compiled, reviewed, or maintained by You, including but not limited to balance sheets, income statements, statements of cash flow, and statements of members' equity.

2. All Tax Returns of the Debtor, including but not limited to all schedules, attachments, and amendments thereto, prepared or maintained by You.

3. All Documents, supporting schedules, reconciliations, and other underlying documentation relating to the preparation of any Tax Returns, including but not limited to all internal communications or memorandum relating to or concerning the Tax Returns.

4. All Documents furnished by any third party to You relating to or in connection with the Debtor or the Tax Returns.

5. All Communications between You and the Debtor, any of the Debtor's officers or member of the board of managers of the Debtor.

6. All Communications you and any third party relating to or concerning the Debtor or the Tax Returns.

7. All K-1 or 1099 forms prepared by You on behalf of the Debtor, including any Communications relating or concerning the issuances of the K-1 or 1099.

8. All Documents relating to the Debtor's issuance of the Croft Bonds, or other securities, or debt instruments including without limitation any private placement memoranda,

subscription agreements, offering documents, investor communications, and related financial analyses or valuations.

Dated: October 19, 2026

Respectfully submitted,
**CROFT BONDHOLDERS**

*/s/* ____________________________

Jonathan W. Young (BBO #569081)
David E. Fialkow (BBO #666192)
Hanna J. Redd (BBO #705222)
**TROUTMAN PEPPER LOCKE LLP**
111 Huntington Ave., 9th Floor
Boston, MA 02199
Tel: 617-239-0100
Email: jonathan.young@troutman.com
david.fialkow@troutman.com
hanna.redd@troutman.com

**Exhibit C**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>OXFORD ST. EDUCATION, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 26-11334-JEB |

**EXHIBIT A TO RULE 2004 SUBPOENA TO MEASURED MOXIE LLC**

Pursuant to Federal Rule of Bankruptcy Procedure 2004, certain Croft Bondholders (the "Bondholders") hereby demand that Measured Moxie, LLC produce documents responsive to the requests set forth herein (such requests, the "Document Requests"), by delivering all such responsive Documents to **Troutman Pepper Locke LLP, 111 Huntington Ave., 9th Floor, Boston, MA 02199, Attn: Jonathan W. Young (jonathan.young@troutman.com), David E. Fialkow (david.fialkow@troutman.com), and Hanna J. Redd (hanna.redd@troutman.com)**, counsel for the Bondholders, within 14 days of service hereof in accordance with the Instructions set forth below.

The Bondholders reserve the right to supplement or revise these Document Requests based upon the Documents produced in response to discovery or any pleadings filed in the above-referenced case on or after the date of these Document Requests.

**DEFINITIONS**

The following definitions shall apply to the terms used in these Document Requests, regardless of whether they are capitalized or uncapitalized:

A. The term "any" shall mean "each and every" as well as "any one."

B. "Bankruptcy Proceeding" shall mean the above-captioned chapter 7 case.

C. "Board" shall mean the Board of Managers of the Debtor, at various times comprised of Scott Given, Michael Goldstein, Robert Lytle, John Remondi, and Rishi Shukla.

D. "Board Member" shall mean each individual serving on the Board of the Debtor.

E. "Communication" means the transmittal or exchange of information, in any form and by any means, Including, documents, writings, letters, notes, face-to-face conversations, telephone conversations, meetings, conferences, correspondence, electronic mail, text message, sound recordings, video recordings, instant messages, or other exchange of information in any form. "Communication" includes all transfers, including electronic transfers, transfers of information stored on computer disk or computer memory, and memoranda to file.

F. "Concerning" means related to, referring to, describing, evidencing, constituting, discussing, embodying, regarding, showing, or stating the subject matter identified. This definition shall apply to all forms of the word "concerning."

G. "Croft Bond(s)" mean those certain loans solicited by the Debtor to raise capital in the form of short-term, high interest loans, memorialized by Promissory Note(s) granted in favor of the purchaser of the Croft Bond.

H. "Debtor" shall mean Oxford St. Education, LLC.

I. "Document(s)" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure, and includes, but is not limited to, all originals, non-identical copies and copies with marginal notations or interlineations of any written Communications, writings, sworn statements, deposition transcripts, affidavits, recordings, photographs, phone records, computer data, electronic mail or other item containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form maintained. The term "Document" also includes all Electronically Stored Information. The term

"Document" further means any document in the possession, custody or control of the entities and individuals to whom these Interrogatories are directed (together with any, employees, agents, and attorneys). Without limitation to the term "control" as used in the preceding sentence, an entity or individual is deemed to be in control of a document if that entity or individual has the right to secure the document or a copy thereof from another entity or individual having actual possession thereof.

J. "Including" means including, without limitation or including, but not limited to.

K. "Measured Moxie" shall mean Measured Moxie Consulting LLC.

L. "Person" includes both the singular and the plural, and means any natural person, business entity, corporation, cooperative, public corporation, partnership, joint venture, or organization.

M. "Tax Returns" shall mean all Federal and State Income Tax Returns of the Debtor.

N. "You" or "Your" means Measured Moxie or Andrew Solomon, as designee, or any affiliates, agents, assigns, directors, employees, officers, partners, representatives, subsidiaries, or any other person acting or purporting to act on her behalf, and any predecessor or successor of the foregoing.

O. As used herein, the singular includes the plural and the plural includes the singular; the conjunctive includes the disjunctive and the disjunctive includes the conjunctive; the masculine includes the feminine and the feminine includes the masculine; and the present tense includes the past tense and the past tense includes the present tense so as to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

P. As used herein, the connectives "and" and "or" as used in the term "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

## INSTRUCTIONS

I. You are instructed to produce all Documents responsive to the Document Requests that are within your possession, custody, or control, or in the possession, custody or control of any other Person or entity acting or purporting to act on your behalf. In responding to these requests, You are to review and search all relevant files of appropriate entities and Persons.

II. Unless otherwise specified, the time period covered by these Document Requests is the period from January 1, 2019 to the present, Including any Documents or materials that were created, referred to, or used in that period. The Document Requests may also reference events before this period.

III. Each Document Request shall be responded to completely, separately, and fully. If there are no Documents responsive to any particular request, your response shall state so in writing.

IV. If, in responding to the Document Requests, you encounter any ambiguities when construing a request or definition, your response shall set forth the matter deemed ambiguous and the construction used in responding.

V. Each request for the production of Documents shall be deemed to be continuing in nature. If at any time additional Documents come into your possession, custody, or control or are brought to your attention, you will promptly supplement your response to these Document Requests.

VI. Where appropriate, the singular form of a word should be interpreted in the plural, and vice versa, to obtain the broadest possible meaning.

VII. If any portion of any document is responsive to any of these requests, the entire document shall be produced, including all attachments, appendices, and exhibits thereto.

VIII. All Documents shall be produced in the manner in which they are maintained in the usual course of your business and/or you shall organize and label the Documents to correspond to each request contained herein. A request for a Document shall be deemed to include a request for any and all file folders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself. Documents attached to each other shall not be separated.

IX. You shall produce all Electronically Stored Information in accordance with the following specifications:

(i) <u>Form of Production</u>. Produce electronically stored information in single-page tiff format (Group IV tiff at 300 dpi) with standard Concordance formatted load file (.dat), including all metadata. Name each tiff file with a unique name matching the bates number labeled on the corresponding page. Group every 10,000 tiffs into a new folder; do not create a separate folder for each Document.

(ii) <u>Image Load File</u>. Provide an image load file Opticon file (.opt) that contains Document boundaries, page counts, and volume information.

(iii) <u>Document Text</u>. For documents that were originally stored as native electronic files and which do not have redactions, produce the extracted full text (not OCR) from the body of each Document in separate document-level *.txt files named for the beginning bates number of the associated Document. Provide OCR text for Documents without extracted text available (non-searchable PDFs, etc.). Group 1,000 document text files per incrementally named "TEXT" directories, separate from image directories. For Documents that were originally stored as native electronic files and which have redactions, produce the OCR text from the redacted image(s) associated with each Document, in separate document-level *.txt files named for the beginning bates number of the associated Document. Clearly label any redacted material to show the redactions on the tiff image. Also provide a comma-delimited extracted text list file with each Document's beginning bates number along with the path to the associated extracted text/OCR text file.

(iv) Native Production for Certain File Types. For files created by Excel or other spreadsheet programs, PowerPoint, or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats. Name the produced native file with the bates number on the first page of the corresponding tiff production of the file/document. Group native files within incrementally named "NATIVE" directories, separate from images directories.

(v) De-duplication. Produce a single copy of each electronic document for which exact duplicates exist. For e-mail messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties. For e-mail attachments and stand-alone electronic files, consolidate duplicates based on MD5 hash of the entire file.

(vi) Metadata. Produce extracted metadata for each document in the form of a Concordance load file (.dat), including the following field (where applicable): bates range begin, bates range end, bates family range begin, bates family range end, e-mail subject lie, file name, e-mail sent date, e-mail sent time, received date, received time, created date, created time, last modified date, last modified time, author, from, to, CC, BCC, custodian, source, source folder, page count, MD5 hash value, native file path location, and confidentiality designation. Documents shall be produced in such fashion as to identify the location of the Document and, where applicable, the natural person or custodian in whose possession it was found.

X. All Documents produced should be bates numbered sequentially, with a unique number on each page.

XI. Any Document withheld from production based on privilege or any similar claim shall be identified by (i) the type of document, (ii) the general subject matter of the Document, (iii) the date of the Document, and (iv) such other information as is sufficient to identify the Document, including the author of the Document, the addressee of the Document, other recipients of the Document and, where not apparent, the relationship of the author and the addressee to each other. The nature of each claim of privilege shall be set forth. If a portion of a Document contains information subject to a claim of privilege, only that portion shall be redacted and the remainder shall be produced.

XII. If any Document within the scope of these Document Requests has been modified or altered in any way, including in part, identify (i) each such Document; (ii) its custodian; and (iii) the person who modified or altered it. The circumstances of such modification or alteration shall be set forth, including how and why the Document was modified or altered.

XIII. All references to a Document include such Document as it may be amended, modified, updated, or otherwise supplemented, including after the date hereof.

XIV. If any Document within the scope of these Document Requests is no longer in your possession or subject to your control, state whether it is (i) missing or lost; (ii) destroyed; (iii) transferred voluntarily or involuntarily to others; or (iv) otherwise disposed of. In each instance, identify the current or last known custodian and the circumstances surrounding such disposition.

XV. If you object to any part of any Document Request, you shall state fully the nature of the objection. Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the Document Request not objected to.

**<u>REQUESTS FOR PRODUCTION OF DOCUMENTS</u>**

1. All financial modeling prepared, compiled, reviewed, or maintained by Measured Moxie on behalf of the Debtor, including but not limited to income statements, statements of cash flow projections, budgets, and statements of members' equity.

2. All Documents relating to or concerning the preparation of any income statements, statements of cash flow projections, budgets, and statements of members' equity.

3. All Documents furnished to You by the Debtor relating to or in connection with the Debtor's income statements, statements of cash flow projections, budgets, and statements of members' equity.

4. All Documents furnished by any third party to You relating to or in connection with the Debtor or its income statements, statements of cash flow projections, budgets, and statements of members' equity.

5. All Documents, supporting schedules, reconciliations, and other underlying documentation relating to the preparation of any of the Documents requested in Requests 1 through 4, above.

6. All Communications and internal Communications, including but not limited to memoranda, emails, Slack messages, Microsoft Teams messages, text messages, or otherwise, concerning or relating to the Debtor or any officer or member of the board of managers of the Debtor.

7. All Communications by and among Measured Moxie and any officer or member of the board of managers of the Debtor.

8. All Communications by and among Measured Moxie and any third party relating to or concerning the Debtor.

9. All Documents relating to the Debtor's issuance of the Croft Bonds, or other securities, or debt instruments including without limitation any private placement memoranda, subscription agreements, offering documents, investor communications, and related financial analyses or valuations.

Dated: October 19, 2026

Respectfully submitted,
**CROFT BONDHOLDERS**

*/s/*

Jonathan W. Young (BBO #569081)
David E. Fialkow (BBO #666192)
Hanna J. Redd (BBO #705222)
**TROUTMAN PEPPER LOCKE LLP**
111 Huntington Ave., 9th Floor
Boston, MA 02199
Tel: 617-239-0100
Email: jonathan.young@troutman.com
david.fialkow@troutman.com
hanna.redd@troutman.com

**Exhibit D**

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>OXFORD ST. EDUCATION, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 26-11334-JEB |

**EXHIBIT A TO RULE 2004 SUBPOENA TO ON DECK CAPITAL, LLC**

Pursuant to Federal Rule of Bankruptcy Procedure 2004, certain Croft Bondholders (the "Bondholders") hereby demand that On Deck Capital, LLC produce documents responsive to the requests set forth herein (such requests, the "Document Requests"), by delivering all such responsive Documents to **Troutman Pepper Locke LLP, 111 Huntington Ave., 9th Floor, Boston, MA 02199, Attn: Jonathan W. Young (jonathan.young@troutman.com), David E. Fialkow (david.fialkow@troutman.com), and Hanna J. Redd (hanna.redd@troutman.com)**, counsel for the Bondholders, within 14 days of service hereof in accordance with the Instructions set forth below.

The Bondholders reserve the right to supplement or revise these Document Requests based upon the Documents produced in response to discovery or any pleadings filed in the above-referenced case on or after the date of these Document Requests.

**DEFINITIONS**

The following definitions shall apply to the terms used in these Document Requests, regardless of whether they are capitalized or uncapitalized:

A. The term "any" shall mean "each and every" as well as "any one."

B. "Bankruptcy Proceeding" shall mean the above-captioned chapter 7 case.

C. "Board" shall mean the Board of Managers of the Debtor, at various times comprised of Scott Given, Michael Goldstein, Robert Lytle, John Remondi, and Rishi Shukla.

D. "Board Member" shall mean each individual serving on the Board of the Debtor.

E. "Communication" means the transmittal or exchange of information, in any form and by any means, Including, documents, writings, letters, notes, face-to-face conversations, telephone conversations, meetings, conferences, correspondence, electronic mail, text message, sound recordings, video recordings, instant messages, or other exchange of information in any form. "Communication" includes all transfers, including electronic transfers, transfers of information stored on computer disk or computer memory, and memoranda to file.

F. "Concerning" means related to, referring to, describing, evidencing, constituting, discussing, embodying, regarding, showing, or stating the subject matter identified. This definition shall apply to all forms of the word "concerning."

G. "Debtor" shall mean Oxford St. Education, LLC.

H. "Document(s)" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure, and includes, but is not limited to, all originals, non-identical copies and copies with marginal notations or interlineations of any written Communications, writings, sworn statements, deposition transcripts, affidavits, recordings, photographs, phone records, computer data, electronic mail or other item containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form maintained. The term "Document" also includes all Electronically Stored Information. The term "Document" further means any document in the possession, custody or control of the entities and individuals to whom these Interrogatories are directed (together with any, employees, agents, and attorneys). Without limitation to the term "control" as used in the preceding sentence, an entity or

individual is deemed to be in control of a document if that entity or individual has the right to secure the document or a copy thereof from another entity or individual having actual possession thereof.

I. "Including" means including, without limitation or including, but not limited to.

J. "Person" includes both the singular and the plural, and means any natural person, business entity, corporation, cooperative, public corporation, partnership, joint venture, or organization.

K. "You" or "Your" means On Deck Capital, LLC, as designee, or any affiliates, agents, assigns, directors, employees, officers, partners, representatives, subsidiaries, or any other person acting or purporting to act on her behalf, and any predecessor or successor of the foregoing.

L. As used herein, the singular includes the plural and the plural includes the singular; the conjunctive includes the disjunctive and the disjunctive includes the conjunctive; the masculine includes the feminine and the feminine includes the masculine; and the present tense includes the past tense and the past tense includes the present tense so as to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

M. As used herein, the connectives "and" and "or" as used in the term "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

## INSTRUCTIONS

I. You are instructed to produce all Documents responsive to the Document Requests that are within your possession, custody, or control, or in the possession, custody or control of any



335509893v1

other Person or entity acting or purporting to act on your behalf. In responding to these requests, You are to review and search all relevant files of appropriate entities and Persons.

II. Unless otherwise specified, the time period covered by these Document Requests is the period from January 1, 2019 to the present, Including any Documents or materials that were created, referred to, or used in that period. The Document Requests may also reference events before this period.

III. Each Document Request shall be responded to completely, separately, and fully. If there are no Documents responsive to any particular request, your response shall state so in writing.

IV. If, in responding to the Document Requests, you encounter any ambiguities when construing a request or definition, your response shall set forth the matter deemed ambiguous and the construction used in responding.

V. Each request for the production of Documents shall be deemed to be continuing in nature. If at any time additional Documents come into your possession, custody, or control or are brought to your attention, you will promptly supplement your response to these Document Requests.

VI. Where appropriate, the singular form of a word should be interpreted in the plural, and vice versa, to obtain the broadest possible meaning.

VII. If any portion of any document is responsive to any of these requests, the entire document shall be produced, including all attachments, appendices, and exhibits thereto.

VIII. All Documents shall be produced in the manner in which they are maintained in the usual course of your business and/or you shall organize and label the Documents to correspond to each request contained herein. A request for a Document shall be deemed to include a request for any and all file folders within which the Document was contained, transmittal sheets, cover letters,

exhibits, enclosures, or attachments to the Document in addition to the Document itself. Documents attached to each other shall not be separated.

IX. You shall produce all Electronically Stored Information in accordance with the following specifications:

(i) Form of Production. Produce electronically stored information in single-page tiff format (Group IV tiff at 300 dpi) with standard Concordance formatted load file (.dat), including all metadata. Name each tiff file with a unique name matching the bates number labeled on the corresponding page. Group every 10,000 tiffs into a new folder; do not create a separate folder for each Document.

(ii) Image Load File. Provide an image load file Opticon file (.opt) that contains Document boundaries, page counts, and volume information.

(iii) Document Text. For documents that were originally stored as native electronic files and which do not have redactions, produce the extracted full text (not OCR) from the body of each Document in separate document-level *.txt files named for the beginning bates number of the associated Document. Provide OCR text for Documents without extracted text available (non-searchable PDFs, etc.). Group 1,000 document text files per incrementally named "TEXT" directories, separate from image directories. For Documents that were originally stored as native electronic files and which have redactions, produce the OCR text from the redacted image(s) associated with each Document, in separate document-level *.txt files named for the beginning bates number of the associated Document. Clearly label any redacted material to show the redactions on the tiff image. Also provide a comma-delimited extracted text list file with each Document's beginning bates number along with the path to the associated extracted text/OCR text file.

(iv) Native Production for Certain File Types. For files created by Excel or other spreadsheet programs, PowerPoint, or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats. Name the produced native file with the bates number on the first page of the corresponding tiff production of the file/document. Group native files within incrementally named "NATIVE" directories, separate from images directories.

(v) De-duplication. Produce a single copy of each electronic document for which exact duplicates exist. For e-mail messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID,

To, and Attach properties. For e-mail attachments and stand-alone electronic files, consolidate duplicates based on MD5 hash of the entire file.

(vi) Metadata. Produce extracted metadata for each document in the form of a Concordance load file (.dat), including the following field (where applicable): bates range begin, bates range end, bates family range begin, bates family range end, e-mail subject lie, file name, e-mail sent date, e-mail sent time, received date, received time, created date, created time, last modified date, last modified time, author, from, to, CC, BCC, custodian, source, source folder, page count, MD5 hash value, native file path location, and confidentiality designation. Documents shall be produced in such fashion as to identify the location of the Document and, where applicable, the natural person or custodian in whose possession it was found.

X. All Documents produced should be bates numbered sequentially, with a unique number on each page.

XI. Any Document withheld from production based on privilege or any similar claim shall be identified by (i) the type of document, (ii) the general subject matter of the Document, (iii) the date of the Document, and (iv) such other information as is sufficient to identify the Document, including the author of the Document, the addressee of the Document, other recipients of the Document and, where not apparent, the relationship of the author and the addressee to each other. The nature of each claim of privilege shall be set forth. If a portion of a Document contains information subject to a claim of privilege, only that portion shall be redacted and the remainder shall be produced.

XII. If any Document within the scope of these Document Requests has been modified or altered in any way, including in part, identify (i) each such Document; (ii) its custodian; and (iii) the person who modified or altered it. The circumstances of such modification or alteration shall be set forth, including how and why the Document was modified or altered.

XIII. All references to a Document include such Document as it may be amended, modified, updated or otherwise supplemented, including after the date hereof.

XIV. If any Document within the scope of these Document Requests is no longer in your possession or subject to your control, state whether it is (i) missing or lost; (ii) destroyed; (iii) transferred voluntarily or involuntarily to others; or (iv) otherwise disposed of. In each instance, identify the current or last known custodian and the circumstances surrounding such disposition.

XV. If you object to any part of any Document Request, you shall state fully the nature of the objection. Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the Document Request not objected to.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

1. All merchant cash agreements, sale of future receipts agreements, loan agreements, promissory notes, or other transactional documents by and between You and the Debtor, including any amendments or modifications thereto.

2. All Documents concerning advances made by You to or for the benefit of the Debtor.

3. All Documents in support of payments made directly or indirectly by the Debtor to You.

4. All Communications between You and the Debtor.

Dated: October 19, 2026

Respectfully submitted,
**CROFT BONDHOLDERS**

*/s/* ______________________________

Jonathan W. Young (BBO #569081)
David E. Fialkow (BBO #666192)
Hanna J. Redd (BBO #705222)
**TROUTMAN PEPPER LOCKE LLP**
111 Huntington Ave., 9th Floor
Boston, MA 02199
Tel: 617-239-0100
Email: jonathan.young@troutman.com
david.fialkow@troutman.com
hanna.redd@troutman.com

# **Exhibit E**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>OXFORD ST. EDUCATION, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 26-11334-JEB |

**EXHIBIT A TO RULE 2004 SUBPOENA TO JACK REMONDI**

Pursuant to Federal Rule of Bankruptcy Procedure 2004, certain Croft Bondholders (the "Bondholders") hereby demand that Jack Remondi produce documents responsive to the requests set forth herein (such requests, the "Document Requests"), by delivering all such responsive Documents to **Troutman Pepper Locke LLP, 111 Huntington Ave., 9th Floor, Boston, MA 02199, Attn: Jonathan W. Young (jonathan.young@troutman.com), David E. Fialkow (david.fialkow@troutman.com), and Hanna J. Redd (hanna.redd@troutman.com)**, counsel for the Bondholders, within 14 days of service hereof in accordance with the Instructions set forth below.

The Bondholders reserve the right to supplement or revise these Document Requests based upon the Documents produced in response to discovery or any pleadings filed in the above-referenced case on or after the date of these Document Requests.

**DEFINITIONS**

The following definitions shall apply to the terms used in these Document Requests, regardless of whether they are capitalized or uncapitalized:

A. The term "any" shall mean "each and every" as well as "any one."

B. "Bankruptcy Proceeding" shall mean the above-captioned chapter 7 case.

C. "Board" shall mean the Board of Managers of the Debtor, at various times comprised of Scott Given, Michael Goldstein, Robert Lytle, You, and Rishi Shukla.

D. "Board Member" shall mean each individual serving on the Board of the Debtor.

E. "Communication" means the transmittal or exchange of information, in any form and by any means, Including, documents, writings, letters, notes, face-to-face conversations, telephone conversations, meetings, conferences, correspondence, electronic mail, text message, sound recordings, video recordings, instant messages, or other exchange of information in any form. Communication includes all transfers, including electronic transfers, transfers of information stored on computer disk or computer memory, and memoranda to file.

F. "Concerning" means related to, referring to, describing, evidencing, constituting, discussing, embodying, regarding, showing, or stating the subject matter identified. This definition shall apply to all forms of the word "concerning."

G. "Croft Bonds" means any and all debt instruments, obligations, or investment interests issued, offered, sold, solicited, executed, renewed, or amended, in whole or in part, by or on behalf of Debtor or any Croft School, from January 1, 2022 through the present, including, but not limited to, any instrument referred to as a "Croft Bond" or as part of the "Croft Bond program." The term includes any form of instrument or documentation, however titled, including promissory notes, "line of credit agreements," bridge loans, "short-term investment[s]," and notes convertible into equity, as well as any obligation evidenced only by email, text message, online form, check, wire, accounting record, or oral agreement. The term covers instruments held by any person or

entity, including current or former parents, grandparents, and other family members of students; students; teachers, nurses, administrators, and other employees; members of Oxford's Board of Managers and their relatives; friends, community members, and equity investors; and any trust, LLC, or other entity. The term applies regardless of term length, interest rate, purported collateral (including any Leader Bank account or "financial support fund"), any per-family or aggregate cap, governing law, or the place of offer or sale. It also applies whether the instrument was executed, funded, repaid, withdrawn, defaulted, or remains outstanding, and whether or not it was recorded in Debtor's books or disclosed to, approved by, or known to the Board of Managers. Calling an instrument a "loan," "bridge loan," "donation," "contribution," "investment," or anything else does not remove it from this definition.

H. "Debtor" shall mean Oxford Street Education, LLC.

I. "Document(s)" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure, and includes, but is not limited to, all originals, non-identical copies and copies with marginal notations or interlineations of any written Communications, writings, sworn statements, deposition transcripts, affidavits, recordings, photographs, phone records, computer data, electronic mail or other item containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form maintained. The term Document also includes all Electronically Stored Information. The term Document further means any document in the possession, custody or control of the entities and individuals to whom these Interrogatories are directed (together with any, employees, agents, and attorneys). Without limitation to the term "control" as used in the preceding sentence, an entity or individual is deemed to be in control of a document if that entity or individual has the right to

secure the document or a copy thereof from another entity or individual having actual possession thereof.

J. "Including" means including, without limitation or including, but not limited to.

K. "Person" includes both the singular and the plural, and means any natural person, business entity, corporation, cooperative, public corporation, partnership, joint venture, or organization.

L. "You" or "Your" means Jack Remondi, or any affiliates, agents, assigns, directors, employees, officers, partners, representatives, subsidiaries, or any other person acting or purporting to act on his behalf, and any predecessor or successor of the foregoing.

M. As used herein, the singular includes the plural and the plural includes the singular; the conjunctive includes the disjunctive and the disjunctive includes the conjunctive; the masculine includes the feminine and the feminine includes the masculine; and the present tense includes the past tense and the past tense includes the present tense so as to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

N. As used herein, the connectives "and" and "or" as used in the term "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

## INSTRUCTIONS

I. You are instructed to produce all Documents responsive to the Document Requests that are within your possession, custody, or control, or in the possession, custody or control of any

other Person or entity acting or purporting to act on your behalf. In responding to these requests, You are to review and search all relevant files of appropriate entities and Persons.

II. Unless otherwise specified, the time period covered by these Document Requests is the period from January 1, 2019 to the present, Including any Documents or materials that were created, referred to, or used in that period. The Document Requests may also reference events before this period.

III. Each Document Request shall be responded to completely, separately, and fully. If there are no Documents responsive to any particular request, your response shall state so in writing.

IV. If, in responding to the Document Requests, you encounter any ambiguities when construing a request or definition, your response shall set forth the matter deemed ambiguous and the construction used in responding.

V. Each request for the production of Documents shall be deemed to be continuing in nature. If at any time additional Documents come into your possession, custody, or control or are brought to your attention, you will promptly supplement your response to these Document Requests.

VI. Where appropriate, the singular form of a word should be interpreted in the plural, and vice versa, to obtain the broadest possible meaning.

VII. If any portion of any document is responsive to any of these requests, the entire document shall be produced, including all attachments, appendices, and exhibits thereto.

VIII. All Documents shall be produced in the manner in which they are maintained in the usual course of your business and/or you shall organize and label the Documents to correspond to each request contained herein. A request for a Document shall be deemed to include a

request for any and all file folders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself. Documents attached to each other shall not be separated.

IX. You shall produce all Electronically Stored Information in accordance with the following specifications:

(i) Form of Production. Produce electronically stored information in single-page tiff format (Group IV tiff at 300 dpi) with standard Concordance formatted load file (.dat), including all metadata. Name each tiff file with a unique name matching the bates number labeled on the corresponding page. Group every 10,000 tiffs into a new folder; do not create a separate folder for each Document.

(ii) Image Load File. Provide an image load file Opticon file (.opt) that contains Document boundaries, page counts, and volume information.

(iii) Document Text. For documents that were originally stored as native electronic files and which do not have redactions, produce the extracted full text (not OCR) from the body of each Document in separate document-level *.txt files named for the beginning bates number of the associated Document. Provide OCR text for Documents without extracted text available (non-searchable PDFs, etc.). Group 1,000 document text files per incrementally named "TEXT" directories, separate from image directories. For Documents that were originally stored as native electronic files and which have redactions, produce the OCR text from the redacted image(s) associated with each Document, in separate document-level *.txt files named for the beginning bates number of the associated Document. Clearly label any redacted material to show the redactions on the tiff image. Also provide a comma-delimited extracted text list file with each Document's beginning bates number along with the path to the associated extracted text/OCR text file.

(iv) Native Production for Certain File Types. For files created by Excel or other spreadsheet programs, PowerPoint, or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats. Name the produced native file with the bates number on the first page of the corresponding tiff production of the file/document. Group native files within incrementally named "NATIVE" directories, separate from images directories.

(v) De-duplication. Produce a single copy of each electronic document for which exact duplicates exist. For e-mail messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties. For e-mail attachments and stand-alone electronic files, consolidate duplicates based on MD5 hash of the entire file.

(vi) Metadata. Produce extracted metadata for each document in the form of a Concordance load file (.dat), including the following field (where applicable): bates range begin, bates range end, bates family range begin, bates family range end, e-mail subject lie, file name, e-mail sent date, e-mail sent time, received date, received time, created date, created time, last modified date, last modified time, author, from, to, CC, BCC, custodian, source, source folder, page count, MD5 hash value, native file path location, and confidentiality designation. Documents shall be produced in such fashion as to identify the location of the Document and, where applicable, the natural person or custodian in whose possession it was found.

X. All Documents produced should be bates numbered sequentially, with a unique number on each page.

XI. Any Document withheld from production based on privilege or any similar claim shall be identified by (i) the type of document, (ii) the general subject matter of the Document, (iii) the date of the Document, and (iv) such other information as is sufficient to identify the Document, including the author of the Document, the addressee of the Document, other recipients of the Document and, where not apparent, the relationship of the author and the addressee to each other. The nature of each claim of privilege shall be set forth. If a portion of a Document contains information subject to a claim of privilege, only that portion shall be redacted and the remainder shall be produced.

XII. If any Document within the scope of these Document Requests has been modified or altered in any way, including in part, identify (i) each such Document; (ii) its custodian; and (iii) the person who modified or altered it. The circumstances of such modification or alteration shall be set forth, including how and why the Document was modified or altered.

XIII. All references to a Document include such Document as it may be amended, modified, updated or otherwise supplemented, including after the date hereof.

XIV. If any Document within the scope of these Document Requests is no longer in your possession or subject to your control, state whether it is (i) missing or lost; (ii) destroyed; (iii) transferred voluntarily or involuntarily to others; or (iv) otherwise disposed of. In each instance, identify the current or last known custodian and the circumstances surrounding such disposition.

XV. If you object to any part of any Document Request, you shall state fully the nature of the objection. Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the Document Request not objected to.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

1. Your Communications by and among any officer or member of the Board of the Debtor concerning or relating to the Debtor's prepetition finances and financial conditions.

2. Communications by and among You and any other officer or member of the Board.

3. All Communications by and among You and any third party relating to or concerning financial information of the Debtor, including but not limited to balance sheets, income statements, statements of cash flow, statements of members' equity, audits, and all other financial documents reviewed by You and/or the Board.

4. All Communications by and among You and any third party relating to or concerning any loans made to the Debtor.

5. All Documents relating to or concerning the Debtor's solicitation and or issuance of investment or offering of securities, bonds or other debt instruments, such as the Croft Bonds, Including without limitation any private placement memoranda, subscription agreements, and all other offerings.

6. All management reports, financial summaries, budgets, forecasts, and variance analyses provided to You by any officer or manager of the Debtor.

7. All Documents relating to or concerning any loan and/or investment made by You to the Debtor.

8. All Documents relating to or concerning any due diligence conducted by You prior to You making any loan and/or investment to the Debtor.

9. All Documents relating to or concerning payments made by the Debtor to You on account of any loan or investment made by You to the Debtor.

10. All Documents prepared, compiled, reviewed, or maintained by You on behalf of the Debtor, including but not limited to income statements, statements of cash flow, projections, budgets and statements of members' equity.

11. All Documents relating to or concerning the preparation of income statements, statements of cash flow, projections, budgets and statements of members' equity.

12. All Documents concerning the existence, management, or funding of a Financial Support Fund or other account or fund that was intended to serve as collateral for any Croft Bond.

13. All Documents concerning, relating to, or constituting any presentations regarding the financial condition of the Debtor.

14. All Documents concerning any prospective or completed financial audit of the Debtor.

Dated: October 19, 2026

Respectfully submitted,
**CROFT BONDHOLDERS**

*/s/* ______________________________

Jonathan W. Young (BBO #569081)
David E. Fialkow (BBO #666192)
Hanna J. Redd (BBO #705222)
**TROUTMAN PEPPER LOCKE LLP**
111 Huntington Ave., 9th Floor
Boston, MA 02199
Tel: 617-239-0100
Email: jonathan.young@troutman.com
david.fialkow@troutman.com
hanna.redd@troutman.com

# **Exhibit F**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>OXFORD ST. EDUCATION, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 26-11334-JEB |

**EXHIBIT A TO RULE 2004 SUBPOENA TO ROBERT LYTLE**

Pursuant to Federal Rule of Bankruptcy Procedure 2004, certain Croft Bondholders (the "Bondholders") hereby demand that Robert Lytle produce documents responsive to the requests set forth herein (such requests, the "Document Requests"), by delivering all such responsive Documents to **Troutman Pepper Locke LLP, 111 Huntington Ave., 9th Floor, Boston, MA 02199, Attn: Jonathan W. Young (jonathan.young@troutman.com), David E. Fialkow (david.fialkow@troutman.com), and Hanna J. Redd (hanna.redd@troutman.com)**, counsel for the Bondholders, within 14 days of service hereof in accordance with the Instructions set forth below.

The Bondholders reserve the right to supplement or revise these Document Requests based upon the Documents produced in response to discovery or any pleadings filed in the above-referenced case on or after the date of these Document Requests.

**DEFINITIONS**

The following definitions shall apply to the terms used in these Document Requests, regardless of whether they are capitalized or uncapitalized:

A. The term "any" shall mean "each and every" as well as "any one."

B. "Bankruptcy Proceeding" shall mean the above-captioned chapter 7 case.

C. "Board" shall mean the Board of Managers of the Debtor, at various times comprised of Scott Given, Michael Goldstein, You, John Remondi, and Rishi Shukla.

D. "Board Member" shall mean each individual serving on the Board of the Debtor.

E. "Communication" means the transmittal or exchange of information, in any form and by any means, Including, documents, writings, letters, notes, face-to-face conversations, telephone conversations, meetings, conferences, correspondence, electronic mail, text message, sound recordings, video recordings, instant messages, or other exchange of information in any form. Communication includes all transfers, including electronic transfers, transfers of information stored on computer disk or computer memory, and memoranda to file.

F. "Concerning" means related to, referring to, describing, evidencing, constituting, discussing, embodying, regarding, showing, or stating the subject matter identified. This definition shall apply to all forms of the word "concerning."

G. "Croft Bonds" means any and all debt instruments, obligations, or investment interests issued, offered, sold, solicited, executed, renewed, or amended, in whole or in part, by or on behalf of Debtor or any Croft School, from January 1, 2022 through the present, including, but not limited to, any instrument referred to as a "Croft Bond" or as part of the "Croft Bond program." The term includes any form of instrument or documentation, however titled, including promissory notes, "line of credit agreements," bridge loans, "short-term investment[s]," and notes convertible into equity, as well as any obligation evidenced only by email, text message, online form, check, wire, accounting record, or oral agreement. The term covers instruments held by any person or entity, including current or former parents, grandparents, and other family members of students; students; teachers, nurses, administrators, and other employees; members of Oxford's Board of Managers and their relatives; friends, community members, and equity investors; and any trust,

LLC, or other entity. The term applies regardless of term length, interest rate, purported collateral (including any Leader Bank account or "financial support fund"), any per-family or aggregate cap, governing law, or the place of offer or sale. It also applies whether the instrument was executed, funded, repaid, withdrawn, defaulted, or remains outstanding, and whether or not it was recorded in Debtor's books or disclosed to, approved by, or known to the Board of Managers. Calling an instrument a "loan," "bridge loan," "donation," "contribution," "investment," or anything else does not remove it from this definition.

H. "Debtor" shall mean Oxford Street Education, LLC.

I. "Document(s)" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure, and includes, but is not limited to, all originals, non-identical copies and copies with marginal notations or interlineations of any written Communications, writings, sworn statements, deposition transcripts, affidavits, recordings, photographs, phone records, computer data, electronic mail or other item containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form maintained. The term Document also includes all Electronically Stored Information. The term Document further means any document in the possession, custody or control of the entities and individuals to whom these Interrogatories are directed (together with any, employees, agents, and attorneys). Without limitation to the term "control" as used in the preceding sentence, an entity or individual is deemed to be in control of a document if that entity or individual has the right to secure the document or a copy thereof from another entity or individual having actual possession thereof.

J. "Including" means including, without limitation or including, but not limited to.

K. “Person” includes both the singular and the plural, and means any natural person, business entity, corporation, cooperative, public corporation, partnership, joint venture, or organization.

L. “You” or “Your” means Robert Lytle, or any agents, assigns, representatives, or any other person acting or purporting to act on his behalf, and any predecessor or successor of the foregoing.

M. As used herein, the singular includes the plural and the plural includes the singular; the conjunctive includes the disjunctive and the disjunctive includes the conjunctive; the masculine includes the feminine and the feminine includes the masculine; and the present tense includes the past tense and the past tense includes the present tense so as to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

N. As used herein, the connectives “and” and “or” as used in the term “and/or” shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

## INSTRUCTIONS

I. You are instructed to produce all Documents responsive to the Document Requests that are within your possession, custody, or control, or in the possession, custody or control of any other Person or entity acting or purporting to act on your behalf. In responding to these requests, You are to review and search all relevant files of appropriate entities and Persons.

II. Unless otherwise specified, the time period covered by these Document Requests is the period from January 1, 2019 to the present, Including any Documents or materials that were created, referred to, or used in that period. The Document Requests may also reference events before this period.

III. Each Document Request shall be responded to completely, separately, and fully. If there are no Documents responsive to any particular request, your response shall state so in writing.

IV. If, in responding to the Document Requests, you encounter any ambiguities when construing a request or definition, your response shall set forth the matter deemed ambiguous and the construction used in responding.

V. Each request for the production of Documents shall be deemed to be continuing in nature. If at any time additional Documents come into your possession, custody, or control or are brought to your attention, you will promptly supplement your response to these Document Requests.

VI. Where appropriate, the singular form of a word should be interpreted in the plural, and vice versa, to obtain the broadest possible meaning.

VII. If any portion of any document is responsive to any of these requests, the entire document shall be produced, including all attachments, appendices, and exhibits thereto.

VIII. All Documents shall be produced in the manner in which they are maintained in the usual course of your business and/or you shall organize and label the Documents to correspond to each request contained herein. A request for a Document shall be deemed to include a request for any and all file folders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself. Documents attached to each other shall not be separated.

IX. You shall produce all Electronically Stored Information in accordance with the following specifications:

(i) Form of Production. Produce electronically stored information in single-page tiff format (Group IV tiff at 300 dpi) with standard Concordance formatted load file (.dat), including all metadata. Name each tiff file with a unique name matching the bates number labeled on the corresponding page.

Group every 10,000 tiffs into a new folder; do not create a separate folder for each Document.

(ii) Image Load File. Provide an image load file Opticon file (.opt) that contains Document boundaries, page counts, and volume information.

(iii) Document Text. For documents that were originally stored as native electronic files and which do not have redactions, produce the extracted full text (not OCR) from the body of each Document in separate document-level *.txt files named for the beginning bates number of the associated Document. Provide OCR text for Documents without extracted text available (non-searchable PDFs, etc.). Group 1,000 document text files per incrementally named "TEXT" directories, separate from image directories. For Documents that were originally stored as native electronic files and which have redactions, produce the OCR text from the redacted image(s) associated with each Document, in separate document-level *.txt files named for the beginning bates number of the associated Document. Clearly label any redacted material to show the redactions on the tiff image. Also provide a comma-delimited extracted text list file with each Document's beginning bates number along with the path to the associated extracted text/OCR text file.

(iv) Native Production for Certain File Types. For files created by Excel or other spreadsheet programs, PowerPoint, or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats. Name the produced native file with the bates number on the first page of the corresponding tiff production of the file/document. Group native files within incrementally named "NATIVE" directories, separate from images directories.

(v) De-duplication. Produce a single copy of each electronic document for which exact duplicates exist. For e-mail messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties. For e-mail attachments and stand-alone electronic files, consolidate duplicates based on MD5 hash of the entire file.

(vi) Metadata. Produce extracted metadata for each document in the form of a Concordance load file (.dat), including the following field (where applicable): bates range begin, bates range end, bates family range begin, bates family range end, e-mail subject lie, file name, e-mail sent date, e-mail sent time, received date, received time, created date, created time, last modified date, last modified time, author, from, to, CC, BCC, custodian, source, source folder, page count, MD5 hash value, native file path location, and confidentiality designation. Documents shall be produced in such

fashion as to identify the location of the Document and, where applicable, the natural person or custodian in whose possession it was found.

X. All Documents produced should be bates numbered sequentially, with a unique number on each page.

XI. Any Document withheld from production based on privilege or any similar claim shall be identified by (i) the type of document, (ii) the general subject matter of the Document, (iii) the date of the Document, and (iv) such other information as is sufficient to identify the Document, including the author of the Document, the addressee of the Document, other recipients of the Document and, where not apparent, the relationship of the author and the addressee to each other. The nature of each claim of privilege shall be set forth. If a portion of a Document contains information subject to a claim of privilege, only that portion shall be redacted and the remainder shall be produced.

XII. If any Document within the scope of these Document Requests has been modified or altered in any way, including in part, identify (i) each such Document; (ii) its custodian; and (iii) the person who modified or altered it. The circumstances of such modification or alteration shall be set forth, including how and why the Document was modified or altered.

XIII. All references to a Document include such Document as it may be amended, modified, updated or otherwise supplemented, including after the date hereof.

XIV. If any Document within the scope of these Document Requests is no longer in your possession or subject to your control, state whether it is (i) missing or lost; (ii) destroyed; (iii) transferred voluntarily or involuntarily to others; or (iv) otherwise disposed of. In each instance, identify the current or last known custodian and the circumstances surrounding such disposition.

XV. If you object to any part of any Document Request, you shall state fully the nature of the objection. Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the Document Request not objected to.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

1. Your Communications with any officer or member of the Board concerning or relating to the Debtor's prepetition finances and financial conditions.

2. Communications by and among You and any officer or member of the Board.

3. All Communications by and among You and any third party relating to or concerning financial information of the Debtor, including but not limited to balance sheets, income statements, statements of cash flow, statements of members' equity, audits, and all other financial documents reviewed by You and/or the Board.

4. All Communications by and among You and any third party relating to or concerning any loans made to the Debtor.

5. All Documents relating to or concerning the Debtor's solicitation and or issuance of investment or offering of securities, bonds or other debt instruments, such as the Croft Bonds, including without limitation any private placement memoranda, subscription agreements, and all other offerings.

6. All management reports, financial summaries, budgets, forecasts, and variance analyses provided to him by any officer of the Debtor.

7. All Documents relating to or concerning any loan and/or investment made by You to the Debtor.

8. All Documents relating to or concerning any due diligence conducted by You prior to You making any loan and/or investment to the Debtor.

9. All Documents relating to or concerning payments made by the Debtor to You on account of any loan or investment made by You to the Debtor.

10. All Documents prepared, compiled, reviewed, or maintained by You on behalf of the Debtor, including but not limited to income statements, statements of cash flow, projections, budgets and statements of members' equity.

11. All Documents relating to or concerning the preparation of income statements, statements of cash flow, projections, budgets and statements of members' equity.

12. All Documents concerning the existence, management, or funding of a Financial Support Fund or other account or fund that was intended to serve as collateral for any Croft Bond.

13. All Documents concerning, relating to, or constituting any presentations regarding the financial condition of the Debtor.

14. All Documents concerning any prospective or completed financial audit of the Debtor.

Dated: October 19, 2026

Respectfully submitted,
**CROFT BONDHOLDERS**

*/s/*

Jonathan W. Young (BBO #569081)
David E. Fialkow (BBO #666192)
Hanna J. Redd (BBO #705222)
**TROUTMAN PEPPER LOCKE LLP**
111 Huntington Ave., 9th Floor
Boston, MA 02199
Tel: 617-239-0100
Email: jonathan.young@troutman.com
david.fialkow@troutman.com
hanna.redd@troutman.com

**Exhibit G**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>OXFORD ST. EDUCATION, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 26-11334-JEB |

**EXHIBIT A TO RULE 2004 SUBPOENA TO KATE MAHONEY**

Pursuant to Federal Rule of Bankruptcy Procedure 2004, certain Croft Bondholders (the "Bondholders") hereby demand that Kate Mahoney produce documents responsive to the requests set forth herein (such requests, the "Document Requests"), by delivering all such responsive Documents to **Troutman Pepper Locke LLP, 111 Huntington Ave., 9th Floor, Boston, MA 02199, Attn: Jonathan W. Young (jonathan.young@troutman.com), David E. Fialkow (david.fialkow@troutman.com), and Hanna J. Redd (hanna.redd@troutman.com)**, counsel for the Bondholders, within 14 days of service hereof in accordance with the Instructions set forth below.

The Bondholders reserve the right to supplement or revise these Document Requests based upon the Documents produced in response to discovery or any pleadings filed in the above-referenced case on or after the date of these Document Requests.

**DEFINITIONS**

The following definitions shall apply to the terms used in these Document Requests, regardless of whether they are capitalized or uncapitalized:

A. The term "any" shall mean "each and every" as well as "any one."

B. "Bankruptcy Proceeding" shall mean the above-captioned chapter 7 case.

C. "Board" shall mean the Board of Managers of the Debtor, at various times comprised of Scott Given, Michael Goldstein, Robert Lytle, John Remondi, and Rishi Shukla.

D. "Board Member" shall mean each individual serving on the Board of the Debtor.

E. "Communication" means the transmittal or exchange of information, in any form and by any means, Including, documents, writings, letters, notes, face-to-face conversations, telephone conversations, meetings, conferences, correspondence, electronic mail, text message, sound recordings, video recordings, instant messages, or other exchange of information in any form. Communication includes all transfers, including electronic transfers, transfers of information stored on computer disk or computer memory, and memoranda to file.

F. "Concerning" means related to, referring to, describing, evidencing, constituting, discussing, embodying, regarding, showing, or stating the subject matter identified. This definition shall apply to all forms of the word "concerning."

G. "Croft Bonds" means any and all debt instruments, obligations, or investment interests issued, offered, sold, solicited, executed, renewed, or amended, in whole or in part, by or on behalf of Debtor or any Croft School, from January 1, 2022 through the present, including, but not limited to, any instrument referred to as a "Croft Bond" or as part of the "Croft Bond program." The term includes any form of instrument or documentation, however titled, including promissory notes, "line of credit agreements," bridge loans, "short-term investment[s]," and notes convertible into equity, as well as any obligation evidenced only by email, text message, online form, check, wire, accounting record, or oral agreement. The term covers instruments held by any person or entity, including current or former parents, grandparents, and other family members of students; students; teachers, nurses, administrators, and other employees; members of Oxford's Board of Managers and their relatives; friends, community members, and equity investors; and any trust,

LLC, or other entity. The term applies regardless of term length, interest rate, purported collateral (including any Leader Bank account or "financial support fund"), any per-family or aggregate cap, governing law, or the place of offer or sale. It also applies whether the instrument was executed, funded, repaid, withdrawn, defaulted, or remains outstanding, and whether or not it was recorded in Debtor's books or disclosed to, approved by, or known to the Board of Managers. Calling an instrument a "loan," "bridge loan," "donation," "contribution," "investment," or anything else does not remove it from this definition.

H. "Debtor" shall mean Oxford Street Education, LLC.

I. "Document(s)" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure, and includes, but is not limited to, all originals, non-identical copies and copies with marginal notations or interlineations of any written Communications, writings, sworn statements, deposition transcripts, affidavits, recordings, photographs, phone records, computer data, electronic mail or other item containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form maintained. The term Document also includes all Electronically Stored Information. The term Document further means any document in the possession, custody or control of the entities and individuals to whom these Interrogatories are directed (together with any, employees, agents, and attorneys). Without limitation to the term "control" as used in the preceding sentence, an entity or individual is deemed to be in control of a document if that entity or individual has the right to secure the document or a copy thereof from another entity or individual having actual possession thereof.

J. "Including" means including, without limitation or including, but not limited to.

K. "Person" includes both the singular and the plural, and means any natural person, business entity, corporation, cooperative, public corporation, partnership, joint venture, or organization.

L. "You" or "Your" means Kate Mahoney, or any agents, assigns, partners, representatives, or any other person acting or purporting to act on her behalf, and any predecessor or successor of the foregoing.

M. As used herein, the singular includes the plural and the plural includes the singular; the conjunctive includes the disjunctive and the disjunctive includes the conjunctive; the masculine includes the feminine and the feminine includes the masculine; and the present tense includes the past tense and the past tense includes the present tense so as to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

N. As used herein, the connectives "and" and "or" as used in the term "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

## INSTRUCTIONS

I. You are instructed to produce all Documents responsive to the Document Requests that are within your possession, custody, or control, or in the possession, custody or control of any other Person or entity acting or purporting to act on your behalf. In responding to these requests, You are to review and search all relevant files of appropriate entities and Persons.

II. Unless otherwise specified, the time period covered by these Document Requests is the period from January 1, 2019 to the present, Including any Documents or materials that were created, referred to, or used in that period. The Document Requests may also reference events before this period.

III. Each Document Request shall be responded to completely, separately, and fully. If there are no Documents responsive to any particular request, your response shall state so in writing.

IV. If, in responding to the Document Requests, you encounter any ambiguities when construing a request or definition, your response shall set forth the matter deemed ambiguous and the construction used in responding.

V. Each request for the production of Documents shall be deemed to be continuing in nature. If at any time additional Documents come into your possession, custody, or control or are brought to your attention, you will promptly supplement your response to these Document Requests.

VI. Where appropriate, the singular form of a word should be interpreted in the plural, and vice versa, to obtain the broadest possible meaning.

VII. If any portion of any document is responsive to any of these requests, the entire document shall be produced, including all attachments, appendices, and exhibits thereto.

VIII. All Documents shall be produced in the manner in which they are maintained in the usual course of your business and/or you shall organize and label the Documents to correspond to each request contained herein. A request for a Document shall be deemed to include a request for any and all file folders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself. Documents attached to each other shall not be separated.

IX. You shall produce all Electronically Stored Information in accordance with the following specifications:

(i) Form of Production. Produce electronically stored information in single-page tiff format (Group IV tiff at 300 dpi) with standard Concordance formatted load file (.dat), including all metadata. Name each tiff file with a unique name matching the bates number labeled on the corresponding page.

Group every 10,000 tiffs into a new folder; do not create a separate folder for each Document.

(ii) Image Load File. Provide an image load file Opticon file (.opt) that contains Document boundaries, page counts, and volume information.

(iii) Document Text. For documents that were originally stored as native electronic files and which do not have redactions, produce the extracted full text (not OCR) from the body of each Document in separate document-level *.txt files named for the beginning bates number of the associated Document. Provide OCR text for Documents without extracted text available (non-searchable PDFs, etc.). Group 1,000 document text files per incrementally named “TEXT” directories, separate from image directories. For Documents that were originally stored as native electronic files and which have redactions, produce the OCR text from the redacted image(s) associated with each Document, in separate document-level *.txt files named for the beginning bates number of the associated Document. Clearly label any redacted material to show the redactions on the tiff image. Also provide a comma-delimited extracted text list file with each Document’s beginning bates number along with the path to the associated extracted text/OCR text file.

(iv) Native Production for Certain File Types. For files created by Excel or other spreadsheet programs, PowerPoint, or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats. Name the produced native file with the bates number on the first page of the corresponding tiff production of the file/document. Group native files within incrementally named “NATIVE” directories, separate from images directories.

(v) De-duplication. Produce a single copy of each electronic document for which exact duplicates exist. For e-mail messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties. For e-mail attachments and stand-alone electronic files, consolidate duplicates based on MD5 hash of the entire file.

(vi) Metadata. Produce extracted metadata for each document in the form of a Concordance load file (.dat), including the following field (where applicable): bates range begin, bates range end, bates family range begin, bates family range end, e-mail subject lie, file name, e-mail sent date, e-mail sent time, received date, received time, created date, created time, last modified date, last modified time, author, from, to, CC, BCC, custodian, source, source folder, page count, MD5 hash value, native file path location, and confidentiality designation. Documents shall be produced in such

fashion as to identify the location of the Document and, where applicable, the natural person or custodian in whose possession it was found.

X. All Documents produced should be bates numbered sequentially, with a unique number on each page.

XI. Any Document withheld from production based on privilege or any similar claim shall be identified by (i) the type of document, (ii) the general subject matter of the Document, (iii) the date of the Document, and (iv) such other information as is sufficient to identify the Document, including the author of the Document, the addressee of the Document, other recipients of the Document and, where not apparent, the relationship of the author and the addressee to each other. The nature of each claim of privilege shall be set forth. If a portion of a Document contains information subject to a claim of privilege, only that portion shall be redacted and the remainder shall be produced.

XII. If any Document within the scope of these Document Requests has been modified or altered in any way, including in part, identify (i) each such Document; (ii) its custodian; and (iii) the person who modified or altered it. The circumstances of such modification or alteration shall be set forth, including how and why the Document was modified or altered.

XIII. All references to a Document include such Document as it may be amended, modified, updated or otherwise supplemented, including after the date hereof.

XIV. If any Document within the scope of these Document Requests is no longer in your possession or subject to your control, state whether it is (i) missing or lost; (ii) destroyed; (iii) transferred voluntarily or involuntarily to others; or (iv) otherwise disposed of. In each instance, identify the current or last known custodian and the circumstances surrounding such disposition.

XV. If you object to any part of any Document Request, you shall state fully the nature of the objection. Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the Document Request not objected to.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

1. All financial Documents prepared, compiled, reviewed, or maintained by You on behalf of the Debtor, including but not limited to income statements, statements of cash flow, projections, budgets and statements of members' equity.

2. All Documents relating to or concerning the preparation of income statements, statements of cash flow, projections, budgets and statements of members' equity, audits and all other financial Documents reviewed by You and/or the Board.

3. All management reports, financial summaries, budgets, forecasts, and variance analyses prepared for or provided to the Debtor's officers or Board.

4. All Communication, agreements, financial information, transaction documents, records of advances, and records of payments relating to or concerning financing from: On Deck Capital, INC., Byzfunder NY LLC, Clearfield Solutions, Meged Funding Group, and any other financial lender to the Debtor.

5. All Documents, including work papers, supporting schedules, reconciliations, and other underlying documentation relating to the preparation of any of the Documents requested in requests 1 through 4 above.

6. Your internal Communications by and among any officer or member of the Board concerning or relating to the Debtor's prepetition finances and financial conditions.

7. Communications by and among You and any officer or member of the Board.

8. All Communications by and among You and any third party relating to or concerning income statements, statements of cash flow, projections, budgets, statements of members' equity, and audits of the Debtor.

9. All Documents relating to or concerning the Debtor's solicitation and or issuance of investment or offering of securities, bonds or other debt instruments, such as the Croft Bonds, including without limitation any private placement memoranda, subscription agreements, and all other offerings.

10. All Documents relating to or concerning loans made by any member of the Board to the Debtor.

11. All Documents relating to or concerning payments made by the Debtor on account of any loans made by any member of the Board to the Debtor.

12. All Documents relating to or concerning loans made by any person to the Debtor other than a member of the Board.

13. All Documents relating to or concerning payments made by the Debtor on account of loans made by any person to the Debtor other than a member of the Board.

14. All Documents and Communications related to the Croft Bonds.

15. All Documents concerning the existence, management, or funding of a Financial Support Fund or other account or fund that was intended to serve as collateral for any Croft Bond.

16. All Documents concerning, relating to, or constituting any presentations regarding the financial condition of the Debtor.

17. All Documents concerning any prospective or completed financial audit of the Debtor.

Dated: October 19, 2026

Respectfully submitted,
**CROFT BONDHOLDERS**

*/s/*

Jonathan W. Young (BBO #569081)
David E. Fialkow (BBO #666192)
Hanna J. Redd (BBO #705222)
**TROUTMAN PEPPER LOCKE LLP**
111 Huntington Ave., 9th Floor
Boston, MA 02199
Tel: 617-239-0100
Email: jonathan.young@troutman.com
david.fialkow@troutman.com
hanna.redd@troutman.com

# **Exhibit H**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>OXFORD ST. EDUCATION, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 26-11334-JEB |

**EXHIBIT A TO RULE 2004 SUBPOENA TO MICHAEL GOLDSTEIN**

Pursuant to Federal Rule of Bankruptcy Procedure 2004, certain Croft Bondholders (the "Bondholders") hereby demand that Michael Goldstein produce documents responsive to the requests set forth herein (such requests, the "Document Requests"), by delivering all such responsive Documents to **Troutman Pepper Locke LLP, 111 Huntington Ave., 9th Floor, Boston, MA 02199, Attn: Jonathan W. Young (jonathan.young@troutman.com), David E. Fialkow (david.fialkow@troutman.com), and Hanna J. Redd (hanna.redd@troutman.com)**, counsel for the Bondholders, within 14 days of service hereof in accordance with the Instructions set forth below.

The Bondholders reserve the right to supplement or revise these Document Requests based upon the Documents produced in response to discovery or any pleadings filed in the above-referenced case on or after the date of these Document Requests.

**DEFINITIONS**

The following definitions shall apply to the terms used in these Document Requests, regardless of whether they are capitalized or uncapitalized:

A. The term "any" shall mean "each and every" as well as "any one."

B. "Bankruptcy Proceeding" shall mean the above-captioned chapter 7 case.

C. "Board" shall mean the Board of Managers of the Debtor, at various times comprised of Scott Given, You, Robert Lytle, John Remondi, and Rishi Shukla.

D. "Board Member" shall mean each individual serving on the Board of the Debtor.

E. "Communication" means the transmittal or exchange of information, in any form and by any means, Including, documents, writings, letters, notes, face-to-face conversations, telephone conversations, meetings, conferences, correspondence, electronic mail, text message, sound recordings, video recordings, instant messages, or other exchange of information in any form. Communication includes all transfers, including electronic transfers, transfers of information stored on computer disk or computer memory, and memoranda to file.

F. "Concerning" means related to, referring to, describing, evidencing, constituting, discussing, embodying, regarding, showing, or stating the subject matter identified. This definition shall apply to all forms of the word "concerning."

G. "Croft Bonds" means any and all debt instruments, obligations, or investment interests issued, offered, sold, solicited, executed, renewed, or amended, in whole or in part, by or on behalf of Debtor or any Croft School, from January 1, 2022 through the present, including, but not limited to, any instrument referred to as a "Croft Bond" or as part of the "Croft Bond program." The term includes any form of instrument or documentation, however titled, including promissory notes, "line of credit agreements," bridge loans, "short-term investment[s]," and notes convertible into equity, as well as any obligation evidenced only by email, text message, online form, check, wire, accounting record, or oral agreement. The term covers instruments held by any person or entity, including current or former parents, grandparents, and other family members of students; students; teachers, nurses, administrators, and other employees; members of Oxford's Board of Managers and their relatives; friends, community members, and equity investors; and any trust,

LLC, or other entity. The term applies regardless of term length, interest rate, purported collateral (including any Leader Bank account or "financial support fund"), any per-family or aggregate cap, governing law, or the place of offer or sale. It also applies whether the instrument was executed, funded, repaid, withdrawn, defaulted, or remains outstanding, and whether or not it was recorded in Debtor’s books or disclosed to, approved by, or known to the Board of Managers. Calling an instrument a "loan," "bridge loan," "donation," "contribution," "investment," or anything else does not remove it from this definition.

H. “Debtor” shall mean Oxford Street Education, LLC.

I. “Document(s)” is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure, and includes, but is not limited to, all originals, non-identical copies and copies with marginal notations or interlineations of any written Communications, writings, sworn statements, deposition transcripts, affidavits, recordings, photographs, phone records, computer data, electronic mail or other item containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form maintained. The term Document also includes all Electronically Stored Information. The term Document further means any document in the possession, custody or control of the entities and individuals to whom these Interrogatories are directed (together with any, employees, agents, and attorneys). Without limitation to the term “control” as used in the preceding sentence, an entity or individual is deemed to be in control of a document if that entity or individual has the right to secure the document or a copy thereof from another entity or individual having actual possession thereof.

J. “Including” means including, without limitation or including, but not limited to.

K. "Person" includes both the singular and the plural, and means any natural person, business entity, corporation, cooperative, public corporation, partnership, joint venture, or organization.

L. "You" or "Your" means Michael Goldstein, or any agents, assigns, representatives, subsidiaries, or any other person acting or purporting to act on his behalf, and any predecessor or successor of the foregoing.

M. As used herein, the singular includes the plural and the plural includes the singular; the conjunctive includes the disjunctive and the disjunctive includes the conjunctive; the masculine includes the feminine and the feminine includes the masculine; and the present tense includes the past tense and the past tense includes the present tense so as to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

N. As used herein, the connectives "and" and "or" as used in the term "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

## INSTRUCTIONS

I. You are instructed to produce all Documents responsive to the Document Requests that are within your possession, custody, or control, or in the possession, custody or control of any other Person or entity acting or purporting to act on your behalf. In responding to these requests, You are to review and search all relevant files of appropriate entities and Persons.

II. Unless otherwise specified, the time period covered by these Document Requests is the period from January 1, 2019 to the present, Including any Documents or materials that were created, referred to, or used in that period. The Document Requests may also reference events before this period.

III. Each Document Request shall be responded to completely, separately, and fully. If there are no Documents responsive to any particular request, your response shall state so in writing.

IV. If, in responding to the Document Requests, you encounter any ambiguities when construing a request or definition, your response shall set forth the matter deemed ambiguous and the construction used in responding.

V. Each request for the production of Documents shall be deemed to be continuing in nature. If at any time additional Documents come into your possession, custody, or control or are brought to your attention, you will promptly supplement your response to these Document Requests.

VI. Where appropriate, the singular form of a word should be interpreted in the plural, and vice versa, to obtain the broadest possible meaning.

VII. If any portion of any document is responsive to any of these requests, the entire document shall be produced, including all attachments, appendices, and exhibits thereto.

VIII. All Documents shall be produced in the manner in which they are maintained in the usual course of your business and/or you shall organize and label the Documents to correspond to each request contained herein. A request for a Document shall be deemed to include a request for any and all file folders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself. Documents attached to each other shall not be separated.

IX. You shall produce all Electronically Stored Information in accordance with the following specifications:

(i) Form of Production. Produce electronically stored information in single-page tiff format (Group IV tiff at 300 dpi) with standard Concordance formatted load file (.dat), including all metadata. Name each tiff file with a unique name matching the bates number labeled on the corresponding page.

Group every 10,000 tiffs into a new folder; do not create a separate folder for each Document.

(ii) Image Load File. Provide an image load file Opticon file (.opt) that contains Document boundaries, page counts, and volume information.

(iii) Document Text. For documents that were originally stored as native electronic files and which do not have redactions, produce the extracted full text (not OCR) from the body of each Document in separate document-level *.txt files named for the beginning bates number of the associated Document. Provide OCR text for Documents without extracted text available (non-searchable PDFs, etc.). Group 1,000 document text files per incrementally named "TEXT" directories, separate from image directories. For Documents that were originally stored as native electronic files and which have redactions, produce the OCR text from the redacted image(s) associated with each Document, in separate document-level *.txt files named for the beginning bates number of the associated Document. Clearly label any redacted material to show the redactions on the tiff image. Also provide a comma-delimited extracted text list file with each Document's beginning bates number along with the path to the associated extracted text/OCR text file.

(iv) Native Production for Certain File Types. For files created by Excel or other spreadsheet programs, PowerPoint, or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats. Name the produced native file with the bates number on the first page of the corresponding tiff production of the file/document. Group native files within incrementally named "NATIVE" directories, separate from images directories.

(v) De-duplication. Produce a single copy of each electronic document for which exact duplicates exist. For e-mail messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties. For e-mail attachments and stand-alone electronic files, consolidate duplicates based on MD5 hash of the entire file.

(vi) Metadata. Produce extracted metadata for each document in the form of a Concordance load file (.dat), including the following field (where applicable): bates range begin, bates range end, bates family range begin, bates family range end, e-mail subject lie, file name, e-mail sent date, e-mail sent time, received date, received time, created date, created time, last modified date, last modified time, author, from, to, CC, BCC, custodian, source, source folder, page count, MD5 hash value, native file path location, and confidentiality designation. Documents shall be produced in such

fashion as to identify the location of the Document and, where applicable, the natural person or custodian in whose possession it was found.

X. All Documents produced should be bates numbered sequentially, with a unique number on each page.

XI. Any Document withheld from production based on privilege or any similar claim shall be identified by (i) the type of document, (ii) the general subject matter of the Document, (iii) the date of the Document, and (iv) such other information as is sufficient to identify the Document, including the author of the Document, the addressee of the Document, other recipients of the Document and, where not apparent, the relationship of the author and the addressee to each other. The nature of each claim of privilege shall be set forth. If a portion of a Document contains information subject to a claim of privilege, only that portion shall be redacted and the remainder shall be produced.

XII. If any Document within the scope of these Document Requests has been modified or altered in any way, including in part, identify (i) each such Document; (ii) its custodian; and (iii) the person who modified or altered it. The circumstances of such modification or alteration shall be set forth, including how and why the Document was modified or altered.

XIII. All references to a Document include such Document as it may be amended, modified, updated, or otherwise supplemented, including after the date hereof.

XIV. If any Document within the scope of these Document Requests is no longer in your possession or subject to your control, state whether it is (i) missing or lost; (ii) destroyed; (iii) transferred voluntarily or involuntarily to others; or (iv) otherwise disposed of. In each instance, identify the current or last known custodian and the circumstances surrounding such disposition.

XV. If you object to any part of any Document Request, you shall state fully the nature of the objection. Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the Document Request not objected to.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. All Communications by and among any officer or member of the Board of the Debtor concerning or relating to Debtor's prepetition finances and financial conditions.

2. Communications by and among You and any other officer or member of the Board concerning or relating to any financing agreements, Including but not limited to loans.

3. All Communications by and among You and any third party relating to or concerning financial information of the Debtor, including but not limited to balance sheets, income statements, statements of cash flow, statements of members' equity, audits, and all other financial documents reviewed by You and/or the Board.

4. All Communications by and among You and any third party relating to or concerning any loans made to the Debtor.

5. All Documents relating to or concerning the Debtor's solicitation and or issuance of investment or offering of securities, bonds or other debt instruments Including without limitation any private placement memoranda, subscription agreements, and all other offerings.

6. All management reports, financial summaries, budgets, forecasts, and variance analyses provided to You by any officer of the Debtor.

7. All Documents relating to or concerning any loan and/or investment made by You to the Debtor.

8. All Documents relating to or concerning any due diligence conducted by You prior to You making any loan and/or investment to the Debtor.

9. All Documents relating to or concerning payments made by the Debtor to You on account of any loan or investment made by You to the Debtor.

10. All Documents prepared, compiled, reviewed, or maintained by You on behalf of the Debtor, including but not limited to income statements, statements of cash flow, projections, budgets and statements of members' equity.

11. All Documents relating to or concerning the preparation of income statements, statements of cash flow, projections, budgets and statements of members' equity.

12. All Documents concerning the existence, management, or funding of a Financial Support Fund or other account or fund that was intended to serve as collateral for any Croft Bond.

13. All Documents concerning, relating to, or constituting any presentations regarding the financial condition of the Debtor.

14. All Documents concerning any prospective or completed financial audit of the Debtor.

Dated: October 19, 2026

Respectfully submitted,
**CROFT BONDHOLDERS**

*/s/* ____________________________

Jonathan W. Young (BBO #569081)
David E. Fialkow (BBO #666192)
Hanna J. Redd (BBO #705222)
**TROUTMAN PEPPER LOCKE LLP**
111 Huntington Ave., 9th Floor
Boston, MA 02199
Tel: 617-239-0100
Email: jonathan.young@troutman.com
david.fialkow@troutman.com
hanna.redd@troutman.com

# **Exhibit I**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>OXFORD ST. EDUCATION, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 26-11334-JEB |

**EXHIBIT A TO RULE 2004 SUBPOENA TO RISHI SHUKLA**

Pursuant to Federal Rule of Bankruptcy Procedure 2004, certain Croft Bondholders (the "Bondholders") hereby demand that Rishi Shukla produce documents responsive to the requests set forth herein (such requests, the "Document Requests"), by delivering all such responsive Documents to **Troutman Pepper Locke LLP, 111 Huntington Ave., 9th Floor, Boston, MA 02199, Attn: Jonathan W. Young (jonathan.young@troutman.com), David E. Fialkow (david.fialkow@troutman.com), and Hanna J. Redd (hanna.redd@troutman.com)**, counsel for the Bondholders, within 14 days of service hereof in accordance with the Instructions set forth below.

The Bondholders reserve the right to supplement or revise these Document Requests based upon the Documents produced in response to discovery or any pleadings filed in the above-referenced case on or after the date of these Document Requests.

**DEFINITIONS**

The following definitions shall apply to the terms used in these Document Requests, regardless of whether they are capitalized or uncapitalized:

A. The term "any" shall mean "each and every" as well as "any one."

B. "Bankruptcy Proceeding" shall mean the above-captioned chapter 7 case.

C. "Board" shall mean the Board of Managers of the Debtor, at various times comprised of Scott Given, Michael Goldstein, Robert Lytle, John Remondi, and You.

D. "Board Member" shall mean each individual serving on the Board of the Debtor.

E. "Communication" means the transmittal or exchange of information, in any form and by any means, Including, documents, writings, letters, notes, face-to-face conversations, telephone conversations, meetings, conferences, correspondence, electronic mail, text message, sound recordings, video recordings, instant messages, or other exchange of information in any form. Communication includes all transfers, including electronic transfers, transfers of information stored on computer disk or computer memory, and memoranda to file.

F. "Concerning" means related to, referring to, describing, evidencing, constituting, discussing, embodying, regarding, showing, or stating the subject matter identified. This definition shall apply to all forms of the word "concerning."

G. "Croft Bonds" means any and all debt instruments, obligations, or investment interests issued, offered, sold, solicited, executed, renewed, or amended, in whole or in part, by or on behalf of Debtor or any Croft School, from January 1, 2022 through the present, including, but not limited to, any instrument referred to as a "Croft Bond" or as part of the "Croft Bond program." The term includes any form of instrument or documentation, however titled, including promissory notes, "line of credit agreements," bridge loans, "short-term investment[s]," and notes convertible into equity, as well as any obligation evidenced only by email, text message, online form, check, wire, accounting record, or oral agreement. The term covers instruments held by any person or entity, including current or former parents, grandparents, and other family members of students; students; teachers, nurses, administrators, and other employees; members of Oxford's Board of Managers and their relatives; friends, community members, and equity investors; and any trust,

LLC, or other entity. The term applies regardless of term length, interest rate, purported collateral (including any Leader Bank account or "financial support fund"), any per-family or aggregate cap, governing law, or the place of offer or sale. It also applies whether the instrument was executed, funded, repaid, withdrawn, defaulted, or remains outstanding, and whether or not it was recorded in Debtor's books or disclosed to, approved by, or known to the Board of Managers. Calling an instrument a "loan," "bridge loan," "donation," "contribution," "investment," or anything else does not remove it from this definition.

H. "Debtor" shall mean Oxford Street Education, LLC.

I. "Document(s)" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure, and includes, but is not limited to, all originals, non-identical copies and copies with marginal notations or interlineations of any written Communications, writings, sworn statements, deposition transcripts, affidavits, recordings, photographs, phone records, computer data, electronic mail or other item containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form maintained. The term Document also includes all Electronically Stored Information. The term Document further means any document in the possession, custody or control of the entities and individuals to whom these Interrogatories are directed (together with any, employees, agents, and attorneys). Without limitation to the term "control" as used in the preceding sentence, an entity or individual is deemed to be in control of a document if that entity or individual has the right to secure the document or a copy thereof from another entity or individual having actual possession thereof.

J. "Including" means including, without limitation or including, but not limited to.

K. "Person" includes both the singular and the plural, and means any natural person, business entity, corporation, cooperative, public corporation, partnership, joint venture, or organization.

L. "You" or "Your" means Rishi Shukla, or any agents, assigns, representatives, or any other person acting or purporting to act on his behalf, and any predecessor or successor of the foregoing.

M. As used herein, the singular includes the plural and the plural includes the singular; the conjunctive includes the disjunctive and the disjunctive includes the conjunctive; the masculine includes the feminine and the feminine includes the masculine; and the present tense includes the past tense and the past tense includes the present tense so as to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

N. As used herein, the connectives "and" and "or" as used in the term "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside of their scope.

## INSTRUCTIONS

I. You are instructed to produce all Documents responsive to the Document Requests that are within your possession, custody, or control, or in the possession, custody or control of any other Person or entity acting or purporting to act on your behalf. In responding to these requests, You are to review and search all relevant files of appropriate entities and Persons.

II. Unless otherwise specified, the time period covered by these Document Requests is the period from January 1, 2019 to the present, Including any Documents or materials that were created, referred to, or used in that period. The Document Requests may also reference events before this period.

III. Each Document Request shall be responded to completely, separately, and fully. If there are no Documents responsive to any particular request, your response shall state so in writing.

IV. If, in responding to the Document Requests, you encounter any ambiguities when construing a request or definition, your response shall set forth the matter deemed ambiguous and the construction used in responding.

V. Each request for the production of Documents shall be deemed to be continuing in nature. If at any time additional Documents come into your possession, custody, or control or are brought to your attention, you will promptly supplement your response to these Document Requests.

VI. Where appropriate, the singular form of a word should be interpreted in the plural, and vice versa, to obtain the broadest possible meaning.

VII. If any portion of any document is responsive to any of these requests, the entire document shall be produced, including all attachments, appendices, and exhibits thereto.

VIII. All Documents shall be produced in the manner in which they are maintained in the usual course of your business and/or you shall organize and label the Documents to correspond to each request contained herein. A request for a Document shall be deemed to include a request for any and all file folders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the Document in addition to the Document itself. Documents attached to each other shall not be separated.

IX. You shall produce all Electronically Stored Information in accordance with the following specifications:

(i) Form of Production. Produce electronically stored information in single-page tiff format (Group IV tiff at 300 dpi) with standard Concordance formatted load file (.dat), including all metadata. Name each tiff file with a unique name matching the bates number labeled on the corresponding page.

Group every 10,000 tiffs into a new folder; do not create a separate folder for each Document.

(ii) Image Load File. Provide an image load file Opticon file (.opt) that contains Document boundaries, page counts, and volume information.

(iii) Document Text. For documents that were originally stored as native electronic files and which do not have redactions, produce the extracted full text (not OCR) from the body of each Document in separate document-level *.txt files named for the beginning bates number of the associated Document. Provide OCR text for Documents without extracted text available (non-searchable PDFs, etc.). Group 1,000 document text files per incrementally named "TEXT" directories, separate from image directories. For Documents that were originally stored as native electronic files and which have redactions, produce the OCR text from the redacted image(s) associated with each Document, in separate document-level *.txt files named for the beginning bates number of the associated Document. Clearly label any redacted material to show the redactions on the tiff image. Also provide a comma-delimited extracted text list file with each Document's beginning bates number along with the path to the associated extracted text/OCR text file.

(iv) Native Production for Certain File Types. For files created by Excel or other spreadsheet programs, PowerPoint, or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats. Name the produced native file with the bates number on the first page of the corresponding tiff production of the file/document. Group native files within incrementally named "NATIVE" directories, separate from images directories.

(v) De-duplication. Produce a single copy of each electronic document for which exact duplicates exist. For e-mail messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties. For e-mail attachments and stand-alone electronic files, consolidate duplicates based on MD5 hash of the entire file.

(vi) Metadata. Produce extracted metadata for each document in the form of a Concordance load file (.dat), including the following field (where applicable): bates range begin, bates range end, bates family range begin, bates family range end, e-mail subject lie, file name, e-mail sent date, e-mail sent time, received date, received time, created date, created time, last modified date, last modified time, author, from, to, CC, BCC, custodian, source, source folder, page count, MD5 hash value, native file path location, and confidentiality designation. Documents shall be produced in such

fashion as to identify the location of the Document and, where applicable, the natural person or custodian in whose possession it was found.

X. All Documents produced should be bates numbered sequentially, with a unique number on each page.

XI. Any Document withheld from production based on privilege or any similar claim shall be identified by (i) the type of document, (ii) the general subject matter of the Document, (iii) the date of the Document, and (iv) such other information as is sufficient to identify the Document, including the author of the Document, the addressee of the Document, other recipients of the Document and, where not apparent, the relationship of the author and the addressee to each other. The nature of each claim of privilege shall be set forth. If a portion of a Document contains information subject to a claim of privilege, only that portion shall be redacted and the remainder shall be produced.

XII. If any Document within the scope of these Document Requests has been modified or altered in any way, including in part, identify (i) each such Document; (ii) its custodian; and (iii) the person who modified or altered it. The circumstances of such modification or alteration shall be set forth, including how and why the Document was modified or altered.

XIII. All references to a Document include such Document as it may be amended, modified, updated or otherwise supplemented, including after the date hereof.

XIV. If any Document within the scope of these Document Requests is no longer in your possession or subject to your control, state whether it is (i) missing or lost; (ii) destroyed; (iii) transferred voluntarily or involuntarily to others; or (iv) otherwise disposed of. In each instance, identify the current or last known custodian and the circumstances surrounding such disposition.

XV. If you object to any part of any Document Request, you shall state fully the nature of the objection. Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the Document Request not objected to.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

1. Your Communications by and among any officer or member of the Board of the Debtor concerning or relating to the Debtor's prepetition finances and financial conditions.

2. Communications by and among You and any other officer or member of the Board.

3. All Communications by and among You and any third party relating to or concerning financial information of the Debtor, including but not limited to balance sheets, income statements, statements of cash flow, statements of members' equity, audits, and all other financial documents reviewed by You and/or the Board.

4. All Communications by and among You and any third party relating to or concerning any loans made to the Debtor.

5. All Documents relating to or concerning the Debtor's solicitation and or issuance of investment or offering of securities, bonds or other debt instruments, such as the Croft Bonds, Including without limitation any private placement memoranda, subscription agreements, and all other offerings.

6. All management reports, financial summaries, budgets, forecasts, and variance analyses provided to You by any officer or manager of the Debtor.

7. All Documents relating to or concerning any loan and/or investment made by You to the Debtor.

8. All Documents relating to or concerning any due diligence conducted by You prior to You making any loan and/or investment to the Debtor.

9. All Documents relating to or concerning payments made by the Debtor to You on account of any loan or investment made by You to the Debtor.

10. All Documents prepared, compiled, reviewed, or maintained by You on behalf of the Debtor, including but not limited to income statements, statements of cash flow, projections, budgets and statements of members' equity.

11. All Documents relating to or concerning the preparation of income statements, statements of cash flow, projections, budgets and statements of members' equity.

12. All Documents concerning the existence, management, or funding of a Financial Support Fund or other account or fund that was intended to serve as collateral for any Croft Bond.

13. All Documents concerning, relating to, or constituting any presentations regarding the financial condition of the Debtor.

14. All Documents concerning any prospective or completed financial audit of the Debtor.

Dated: October 19, 2026

Respectfully submitted,
**CROFT BONDHOLDERS**

*/s/* ______________________________

Jonathan W. Young (BBO #569081)
David E. Fialkow (BBO #666192)
Hanna J. Redd (BBO #705222)
**TROUTMAN PEPPER LOCKE LLP**
111 Huntington Ave., 9th Floor
Boston, MA 02199
Tel: 617-239-0100
Email: jonathan.young@troutman.com
david.fialkow@troutman.com
hanna.redd@troutman.com